## Godcharles and Company *versus* Wigeman.

1. The Act of April 13th, 1834, P. L., 527, enacting that "Twenty hundreds make one ton," cannot be controlled by a custom in a particular business making twenty-two hundred and forty pounds a ton.

2. The first four sections of the "Store Order Act," Act of June 29th, 1881, P. L., 147, attempt to prevent persons who are *sui juris* from making their own contracts, and are, therefore, unconstitutional and void.

April 28th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Northumberland county :* Of January Term 1886, No. 196.

[Godcharles & Co. *v.* Wigeman.]

Assumpsit by Frank Wigeman against Reuben Johnson, C. A. Godcharles, R. A. Bortly, C. Godcharles, S. A. Andrews, William Godcharles and H. M. Taggart, trading and doing business under the firm name of C. A. Godcharles & Company, to recover wages for labor as a puddler. Pleas, non assumpsit, payment, set-off with leave.

The following facts appeared on the trial before Rockefeller, P. J.:

The plaintiff was employed as a puddler by the defendants in their nail mill at Milton, Pa. The defendants posted in their mill a set of rules to govern their works, *inter alia:* Puddling, $4 per ton of 2240 pounds; scrap, $2.50 per ton of 2240 pounds. They claimed on the trial that it was the custom in all mills of like character to post rules for the government of the work, and that these rules became part of the contract between the employer and employé.

During the time of his employment the plaintiff asked for and received from the defendants orders on different parties for the purchase of coal and other articles, which orders were honored by the parties on whom they were drawn, and Godcharles & Co. afterwards paid them; these orders were similar to the following: "William P. Stout—Let Frank Wigeman have coal to the amount of $4.25. C. A. Godcharles & Co."

These orders the plaintiff maintained could not, under the Act of June 29th, 1881, P. L., 147, be applied as a set-off to his claim for wages for labor as a puddler.

On the trial defendants' counsel offered to prove that it is the universal custom in mills in Pennsylvania, of the character of that owned by defendants, to fix the rate of wages for puddling at so much for 2240 pounds; the evidence that plaintiff recognized this custom and acted upon it, by settling with defendants on their several pay-days upon this basis, being already in.

This for the purpose of showing the contract between the parties, as to the amount of wages the plaintiff was to receive.

To this the plaintiff's counsel objected:

1. That the plaintiff cannot be bound by rules fixed in defendants' mill unless he had notice of them; merely because it is the universal custom in Pennsylvania in mills of this character would not bind the plaintiff unless he had knowledge of that universal custom, and there is no evidence that he had.

2. Because it has not been shown that plaintiff ever made a settlement with these defendants for anything, or in any way, much less upon a basis of 2240 pounds to the ton, and it is not shown that plaintiff ever knew he was going to be paid at that rate.

[Godcharles & Co. v. Wigeman.]

3. The evidence is immaterial and irrelevant for the purpose offered.

THE COURT: The evidence of a custom to pay for puddling at a rate different from what the law of the State declares shall be a ton, we think is inadmissible to bind the plaintiff. But if this mill had rules stating the price to be paid for puddling a ton of 2240 pounds, and the plaintiff knew of these rules, I think he would be bound. (First assignment of error.)

Defendants' counsel offered to prove that it is the universal custom in Pennsylvania for all mills of the character of defendants' to have a set of rules governing the terms upon which the work of puddling is done, taken in connection with the evidence already in as to what the rules of defendants' mill in relation thereto were, and that the same were posted in conspicuous places in said mill during the plaintiff's employment therein.

This for the purpose of showing the contract between the parties as to the terms of plaintiff's employment by defendants.

To this the plaintiff's counsel objected:

1. Because this custom would not prevail unless the plaintiff knew of the existence of it, and it is not offered to show that he knew of the existence of such a custom.

2. Because the rules of this mill would only be binding upon the plaintiff if he knew them.

3. Because the evidence is immaterial and irrelevant.

THE COURT: The objections are sustained, the evidence rejected. (Second assignment of error.)

Defendants' counsel offered to prove that it is the universal custom in Pennsylvania for mills of the character of defendants' to have a set of rules governing the terms upon which the work of puddling is done; taken in connection with the evidence already in as to what the rules of defendants' mill were in relation thereto, and that the same were posted in a conspicuous part of the mill at the time of and during the plaintiff's employment therein.

This for the purpose of showing that inquiry was the duty of the plaintiff as to what the rules of this mill were, and to affect him with constructive notice of said rules.

To this the plaintiff's counsel objected:

1. Because it is not offered to be shown that plaintiff knew of this universal custom.

2. Because this universal custom will not govern the making of the law of this case.

3. The plaintiff could not have been put upon inquiry unless he knew of this universal custom.

4. Because the evidence is immaterial and irrelevant.

THE COURT: I am of opinion that the offer of evidence

to show a custom, without offering to show that plaintiff had knowledge of such custom is inadmissible.

The objections are sustained, the evidence rejected. (Third assignment of error.)

The defendants presented the following points:

1. If the jury believe that it is the universal custom in mills of the character of defendants' to have rules fixing the terms upon which puddling is done, and if the jury believe that the rules of defendants' mill were conspicuously posted in the mill and office, it was the duty of the plaintiff seeking employment at the mill to inquire what the rules of the mill were, and the fact that the rules were so posted would affect him with notice as to what they were, and he would be bound by them.

Answer. This perhaps would be so if there was any evidence that the plaintiff knew of the existence of such a custom, but in the absence of such evidence, I cannot say that as a matter of law that the mere posting of the rules in conspicuous places in the mill and office would affect the plaintiff with notice as to what they were, and that he would be bound by them. (Fourth assignment of error.)

2d. If the jury believe that one of the rules of defendants' mill was that 2240 pounds of iron should be puddled for a ton, and that plaintiff at the time of hiring with defendants had either actual or constructive notice of such rules, this rule then became a part of the contract, and plaintiff must make 2240 pounds for a ton.

Answer. This is so if the plaintiff had actual notice of such rule. You have the evidence as to the posting of the rules in conspicuous places in and about the defendants' mill, and you are to determine from all the evidence in the case whether the plaintiff had notice of the rule. (Fifth assignment of error.)

In the general charge the Court instructed the jury, *inter alia*, as follows: The defendants contend that this Act of Assembly (Act of June 29th, 1886), is unconstitutional and void, and that it ought not to be applied in this or any other case; that it is not binding upon the citizens of this Commonwealth because it applies to a class, and that the legislature is forbidden by the Constitution to pass any laws which are not general, and that do not apply to all citizens of the Commonwealth. The question has not as yet been raised before the Supreme Court of this State, so far as I know. If it had been decided by that Court, of course that decision would be binding upon this Court. It has, however, been raised before other courts, and it has been decided to be constitutional, and this Court does not now propose to say that it is unconstitutional.

[Godcharles & Co. v. Wigeman.]

Therefore, so far as its provisions apply to the case now before the Court and jury, we will endeavor to apply them.

&ast; &ast; &ast; &ast; &ast; &ast;

It is these orders that were given to William P. Stout and Dr. Follmer that the plaintiff especially objects to, and contends that they were illegal and void on account of the provisions of the Act of Assembly passed in 1881, which I have just read in your presence. The legislature doubtless intended that there should be cash settlements made at the end of each month, and that all workmen should be paid in cash, or by an order such as the third section describes. That being so, all orders given by employers engaged in the business of manufacturing, to their workmen, payable in goods or anything other than money, are void, and cannot be used by such manufacturer or employer in the payment of the wages of the employé. (Sixth assignment of error.)

&ast; &ast; &ast; &ast; &ast; &ast;

Therefore we say to you as a matter of law, that orders given by the defendants, Godcharles & Company, to the plaintiff on William P. Stout, payable in coal, cannot now be used by the defendants in payment of the plaintiff's claim in this case, he being one of their workmen at their manufactory; and also the same remark applies to the order given to the plaintiff by the defendants on Dr. J. S. Follmer, unless there be other facts and circumstances in the case that would change it. (Seventh assignment of error.)

Verdict for the plaintiff in the sum of $87.67, and judgment thereon, whereupon the defendant took this writ assigning for error the rejection of evidence, the answer to defendant's points, and those portions of the charge above set out.

*W. L. Hackenberg* (*P. L. Hackenberg* and *William F. Derr* with him), for plaintiff in error.—Where a custom to do a thing in a certain manner, or upon certain terms exists in any particular business or trade, those engaged in that business or trade, are presumed to contract with reference to that custom, and the proof of such custom is evidence to go to the jury, as to the intention of the parties at the time the contract was made : Sampson *v.* Gazzam, 30 Am. Dec., 583 ; Thompson *v.* Hamilton, 23 Id., 621 ; Wilcocks *v.* Phillips Exrs., Wall. Jr., 64 ; McMaster *v.* Penna. R. R. Co., 19 P. F. S., 377.

What would be the force of proving an universal custom or usage, if knowledge of such custom must be shown in the party to be affected by it? Lincoln Bank *v.* Page, 6 Am. Dec., 53.

The custom once established, it then became the duty of the plaintiff seeking employment at defendants' mill, to find from

[Godcharles & Co. v. Wigeman.]

the rules posted, the terms under which the work of puddling in defendants' mill was done; and if he failed to do so he will be visited with constructive notice of what those rules were; Whitesell *v.* Crane, 8 W. & S., 373; Hottenstein *v.* Lerch, 12 W. N. C., 6; Leonard's Appeal, 13 Norris, 186.

The Act of June 29th, 1881, is unconstitutional and void, as being in conflict with Article III, section 7 of the Constitution, which declares among other things; "The General Assembly shall not pass any local or special law, regulating labor, trade, mining or manufacturing, granting to any corporation, or individual, any special or exclusive privilege or immunity."

The title of the Act, "To secure to operatives and laborers, engaged in and about coal mines, manufactories of iron and steel, and all other manufactories," &c. sufficiently stamps upon it,its special or objectionable character, and the title must be read as a part of the Act. The first and second sections preserve this express limitation in their application to laborers in manufactories and mines.

The purpose and intention of this prohibitory section of the Constitution clearly expressed in one of the debates before the constitutional convention, "Equal privileges for all, exclusive privileges for none, should be the sentiment of every citizen of this Commonwealth:" 2 Const, Debates, 590.

*C. R. Savidge* (*M. L. Snyder* with him), for defendant in error.—The first five assignments of error may be considered together, as they raise substantially but one question.

In Pennsylvania "twenty hundreds make one ton" (Act of 15th April, 1834, P. L., 527, section 17).

This is a statute which ought to be enforced. Custom cannot control it. It is error to admit evidence of custom to control a statute. This question is fully discussed and it is believed finally settled, by LEWIS, C. J., in Evans *v.* Myers, 1 Casey, 114, and by same judge in Weaver *v.* Fagley & Bro., 5 Casey, 27. These cases are implicitly relied upon in support of this position.

The sixth and seventh assignments of error relate to the question of the constitutionality of the Act of June 29th, 1881, P. L., 147, and may be considered together.

It is claimed that this Act is in conflict with Article III. section 7, of the Constitution of 1874, and is class legislation.

It is argued that the Act "grants to individuals special or exclusive privileges or immunities." The Act cannot be so read or interpreted. It is not an Act granting privileges to any person or persons. It is an Act imposing an obligation or duty. Employés, manufacturers &c., and all other persons, always had, and all persons still have, the privilege and im-

[Godcharles & Co. v. Wigeman.]

munity of refusing to be paid their wages in orders or other than in cash.

It is not a "local or special law regulating" "mining or manufacturing."

It is as general in its application to mining or manufacturing as it could possibly be made.

Mr. Justice GORDON delivered the opinion of the Court, October 4th, 1886.

The first five assignments of error cannot be sustained. They are in fact but five exceptions to a single ruling of the Court, or what might properly have been embraced in one ruling. The offer, with its variations, was to prove a custom among iron mills, of the character of that owned by the defendants, making the ton 2240 pounds; but the Court held that the custom, if proved, was not good, because opposed to the statute which fixes the legal ton at 2000 pounds, and that the former could not be imposed upon the plaintiff except by proof of a special contract, or of such knowledge by him of the rules of the establishment as would raise the presumption that he was working under them, hence the proposed evidence was rejected.

It requires no argument to establish the correctness of this ruling, hence we attempt none. The seventh assignment must be sustained. The orders given by the defendants and received by the plaintiff constituted a proper set-off. The first, second, third and fourth sections of the Act of June 29th, 1881, are utterly unconstitutional and void, inasmuch as by them an attempt has been made by the legislature to do what, in this country, cannot be done; that is, prevent persons who are *sui juris* from making their own contracts. The Act is an infringement alike of the right of the employer and the employé; more than this, it is an insulting attempt to put the laborer under a legislative tutelage, which is not only degrading to his manhood, but subversive of his rights as a citizen of the United States.

He may sell his labor for what he thinks best, whether money or goods, just as his employer may sell his iron or coal, and any and every law that proposes to prevent him from so doing is an infringement of his constitutional privileges, and consequently vicious and void.

> The judgment of the Court below is reversed, and a *venire* ordered.