## REPUBLIC IRON & STEEL COMPANY *v.* THE STATE.

### [No. 19,785.   Filed April 8, 1903.]

CONSTITUTIONAL LAW.—*Weekly Wage Law.— Title.—Penalty.*—The penalty clause of the act of 1899 (Acts 1899, p. 193) providing for the weekly payment of wages is not void because no mention thereof is made in the title of the act. *pp. 382, 383.*

SAME.—*Weekly Wage Law.*—The act of 1899 (Acts 1899, p. 193) providing for the weekly payment of wages and imposing a penalty for the violation thereof is an unreasonable restriction upon the freedom of contract, and is unconstitutional and void. *pp. 383-392.*

From Delaware Circuit Court;   *J. G. Leffler,* Judge.

Action by the State against the Republic Iron & Steel Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*S. N. Chambers, S. O. Pickens, C. W. Moores, J. W. Ryan, W. A. Thompson, F. C. Olive* and *R. F. Davidson,* for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores, C. C. Hadley* and *E. D. Salsbury,* for State.

HADLEY, C. J.—Action in the name of the State to recover wages and a penalty under the provisions of §§1, 2 of the act approved February 28, 1899 (Acts 1899, p. 193) commonly known as the weekly wage law.

It is averred in the complaint that the defendant, the Republic Iron & Steel Company, is a corporation engaged in operating a manufacturing plant at Muncie, Indiana, and employs therein a large number of persons to labor for hire; that the defendant is not a common carrier engaged in interstate commerce; that on the 1st day of February, 1900, and prior thereto, William Haverstick was engaged by the defendant to work in said plant; that on the 10th day of February, 1900, the defendant paid Haverstick for his services rendered up to and including the 31st day of January, 1900, but reserved and held back the wages due him for services rendered during the first ten days of February, 1900; that on the 17th day of February, 1900, the defendant was indebted to Haverstick for labor performed, in the sum of $96.95, which service is set forth in a bill of particulars filed as a part of the complaint; that subsequent to the 1st day of February, 1900, Haverstick was never absent from his regular place of labor in said plant at any time of stated payment of wages fixed by the defendant; that Haverstick was present at his regular place of labor on the 17th day of February, ready and willing to receive the wages due to him, and there was due him on said day said amount of $96.95, and which remains unpaid; that although the laws of the State of Indiana require the defendant to pay its employes each week all that is due, save only the right to withhold from an employe compensation for services for six days, said defendant wrongfully and unlawfully failed, neglected, and refused to comply with said laws, and to pay Haverstick each week what was due him. Prayer for judgment for Haverstick for amount due, with six *per centum* thereon, and for the State a judgment equal to fifty *per centum* of the unpaid wages. Ap-

pellant's demurrer to the complaint was overruled, and a proper exception reserved. Upon issues joined, there was a trial by the court, and a finding and judgment for the plaintiff for $48.45 for the use of the common schools, assessed against the defendant as a penalty on the amount due and unpaid Haverstick when the suit was commenced, and for all costs.

Appellant's assault upon the complaint questions the constitutional validity of the statute upon which the action is founded. It is conceded that the evidence supports the essential averments of the complaint, and is sufficient to entitle appellee to a recovery, if the statute in question is valid. The preamble and three material sections of the act follow: "An act providing for the weekly payment of wages due employes, making it unlawful for an employer to assess a fine against the wages of an employe, and regulating changes in rate of wages, prohibiting the assignment of future wages; providing for its enforcement and repealing all laws in conflict therewith. [Approved February 28, 1899.] Section 1. Be it enacted by the General Assembly of the State of Indiana, that every person, company, corporation or association employing any person to labor, or in any other service for hire, shall make weekly payments for the full amount due for such labor or service, in lawful money of the United States to within six days or less of the time of such payment; but if, at any time of stated payment, any employe as aforesaid shall be absent from his regular place of labor or service, he shall be paid in like manner thereafter on demand: Provided, that this act shall not apply to any employe engaged by a common carrier in interstate commerce: And provided, that the labor commissioners of the State, after notice and hearing, may exempt any of the aforesaid parties whose employes prefer a less frequent payment, from paying any of its employes weekly, if, in the opinion of the said commissioners, the interests of the public and of such employes

will not suffer thereby. Section 2. The chief inspector of the department of inspection of this State, or any person interested, may bring suit in the name of the State in any court of competent jurisdiction, and the prosecuting attorney of any county wherein such suit is brought, shall prosecute the same against any person, company, corporation or association that neglects or refuses to comply with §1 of this act, within ten days after such payment is due and left unpaid; and in case judgment is rendered in favor of said employe and against said defendant for the sum alleged to be due or any part thereof, six *per centum* of such sum shall be added to such judgment from the time when payment was due; and a penalty of fifty *per centum* of the amount of such judgment shall be assessed and collected from said defendant by said court and paid into the school fund of the State." "Section 6. It is hereby made the duty of the chief inspector and of the department of inspection to enforce the provisions of this act by the processes of the courts, and in the name of the State; and, upon their failure so to do, any citizen of the State is hereby authorized to do the same in the name of the State." Acts 1899, p. 193.

The amount of wages due Haverstick at the commencement of this suit, to wit, $96.95, having been subsequently, and before trial, fully paid, the judgment rendered was limited to an imposition of the fifty *per centum* penalty provided for by §2 of the act. Hence, from the state of the record no other question is properly presented by the appeal than the validity of said sections.

1. It is first submitted that, because the title of the act makes no mention of penalties for the violation of its provisions, the penalty clause of §2, *supra,* is void under article 4, §19, of the Indiana Constitution, which provides that "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title." The evident purpose in requiring a title to

a legislative proposition was thereby to convey notice of the general subject to be affected to those who are called on to act upon it, and thus to prevent deception by the blending of incongruous subjects in the same act. It is only necessary that the general subject of the act be expressed— that is, be indicated—by the title. It is not essential that the means and methods provided in the act for the securing of intended results and ends shall be set forth in the title. The Constitution is satisfied if the constituent means embraced in the body of the act have a proper relation to each other and to the subject expressed in the title, and are consistent in tending to carry forward and to accomplish the general purpose indicated by the title and intended by the legislation. *Isenhour* v. *State,* 157 Ind. 517, 87 Am. St. 228; *Lewis* v. *State,* 148 Ind. 346; *Benson* v. *Christian,* 129 Ind. 535; *City of Indianapolis* v. *Huegele,* 115 Ind. 581.

No act of the legislature can be made effective without some reasonable provision for its enforcement, and the assessment of a penalty for noncompliance has long and many times been recognized by the General Assembly and the courts of this State as an efficient and reasonable means of securing obedience. The subject of the act in question is "to provide for the weekly payment of wages due," and to secure performance of the duty thus imposed upon employers, a penalty is provided for nonperformance. The penalty provision of §2, *supra,* is, therefore, not only connected with and germane to the subject of the act, but calculated to be an effective means in accomplishing the purpose indicated by the title. Hence the provision is not within the evil intended by the Constitution to be excluded.

2. It is not necessary to a disposition of the case that we determine whether appellant, being arraigned on a state statute, can demand protection of its liberty and property under the fifth amendment of the federal Constitution (see *Thorington* v. *Montgomery,* 147 U. S. 490, 13 Sup. Ct.

394, 37 L. Ed. 252; *Holden* v. *Hardy,* 169 U. S. 366-382, 18 Sup. Ct. 383, 42 L. Ed. 780; *State* v. *Boswell,* 104 Ind. 541; *Butler* v. *State,* 97 Ind. 378, 382), or whether, being a corporation, the right to sue and be sued, so invests it with citizenship as to entitle it to invoke the fourteenth amendment to the federal Constitution against an abridgement of its privileges and immunities. See *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; *Daggs* v. *Orient Ins. Co.,* 136 Mo. 382, 396, 38 S. W. 85, 58 Am. St. 638, 35 L. R. A. 227.

It is not denied that appellant, though a corporation, is a person, within the rulings of the Supreme Court of the United States, and as such may demand that its liberty and property be safeguarded under the last two clauses of §1 of the fourteenth amendment to the federal Constitution, which declares, "Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is furthermore conceded that appellant may invoke, as it does, the guaranties of the federal and state Constitutions against the impairment of contracts (Art. 1, §10, U. S. Const.; Art. 1, §24, State Const.); and putting aside all subsidiary questions not properly involved in the appeal, we come directly to a consideration of the judgment rendered, which stands wholly upon the statute, and which must fall if the supporting provisions of the statute are found to be unconstitutional.

Appellant is authorized to contract and be contracted with as a natural person, and we must therefore assume at the beginning that in its legislation the State is bound to recognize, even in the exercise of its police power, the right of all persons to the equal protection of the laws, and to the security afforded by due process of law. The right to a sustenance, and to acquire property, and to make treaties in relation thereto, is liberty in the constitutional sense.

Labor is property. It is exchangeable for food and raiment and comforts, and may be bought and sold, and contracts made in relation thereto, the same as concerning any other property.

The question therefore arises, is the arbitrary denial of the right to exchange money for labor—one class of property for another—in matters which affect no public interest, an unwarrantable interference with the right of contract, and a depriving of the person of liberty and property without due process of law? The only rational grounds upon which it is claimed there may be legislative interference with freedom of contract for lawful purposes is in the exercise of that undefined, reserved force of the people known as the police power. There is a divergence of view as to the proper scope and application of this power, but all authorities seem to agree that it may be exerted only on behalf of some general, public interest, as distinguished from individuals or classes; that is to say, to protect the public health, safety, morals, prevent fraud and oppression, and promote the general welfare. It is not to be invoked to protect one class of citizens against another class unless such interference is for the real protection of society in general. As far-reaching and flexible as the power has often been held to be, it is nowhere claimed for it that it may override the Constitution, and strike down a right that has been solemnly and expressly guaranteed by the fundamental law. The legislature has exclusive authority to make laws setting it in motion and regulating its exercise. This body, therefore, very properly has a wide discretion in determining what interest of the public requires it, and what measures are necessary for the protection of such interest. But when the power is used for the purpose of regulating a business, occupation, or employment which in itself is lawful and useful to the community, it becomes the duty of the court, when called on, to decide whether the particular

regulation is just and reasonable and in harmony with the constitutional guaranties, or whether it is an unwarrantable invasion of the protected rights of the citizen to pursue such business or employment upon terms of his own choosing. *Street* v. *Varney Electrical Sup. Co., ante,* 338; *State* v. *Gerhardt,* 145 Ind. 439-451, 33 L. R. A. 313; *People, ex rel.,* v. *Coler,* 166 N. Y. 1, 59 N. E. 716, 52 L. R. A. 814, 82 Am. St. 605; *Colon* v. *Lisk,* 153 N. Y. 188, 196, 47 N. E. 302, 60 Am. St. 609; *Ruhstrat* v. *People,* 185 Ill. 133, 57 N. E. 41, 49 L. R. A. 181, 76 Am. St. 30; *State, ex rel.,* v. *Ashbrook,* 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265, 77 Am. St. 765; *Mugler* v. *Kansas,* 123 U. S. 623, 661, 8 Sup. Ct. 273, 31 L. Ed. 205; *Lawton* v. *Steele,* 152 U. S. 133, 137, 14 Sup. Ct. 499, 38 L. Ed. 385; *Ex parte Whitwell,* 98 Cal. 73, 32 Pac. 870, 35 Am. St. 152, 162, 19 L. R. A. 727; *Askam.* v. *King County,* 9 Wash. 1, 36 Pac. 1097; *Eden* v. *People,* 161 Ill. 296, 43 N. E. 1108, 32 L. R. A. 664, 52 Am. St. 365; Tiedeman, State & Fed. Control, §1; Tiedeman, Limitation of Police Power, §85; *Conley* v. *Union, etc., Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679.

We quote the words of Brown, J., in *Lawton* v. *Steele, supra:* "To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts." It follows that a statute to be within the power must be responsive to some public necessity, suit-

able to subserve it, and reasonable in its operation upon the persons whom it affects. It is not claimed that the weekly payment of wages involves any question of public health, public safety, or public morals.

The Attorney-General endeavors to justify the law upon two grounds: (1) The wage-earners are not upon an equal footing with employers, and opportunities for oppression and consequent public suffering ensue; and (2) thrift being beneficial to the community, it should be encouraged by enabling workmen to pay cash for current demands, which can only be done by requiring frequent payment of wages. Assuming all these things to be true, they do not of themselves justify the arbitrary invasion of the personal rights and liberty of the citizen. Liberty to contract on one's own terms, to decide for himself his own employment, to buy and sell, to exchange one belonging for another, are among the most valuable and cherished rights. As was said in *State, ex rel., v. Ashbrook,* 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265, 77 Am. St. 765: "In order to sustain legislation of the character of the act in question, as a police measure, the courts must be able to see that its object to some degree tends toward the prevention of some offense or manifest evil, or has for its aim the preservation of the public health, morals, safety or welfare. * * * Mere legislative assumption of the right to direct and indicate the channel and course into which the private energies of the citizens shall flow, or the attempt to abridge, or hamper, his right to pursue any lawful calling, or avocation, which he may choose, without unreasonable regulation or molestation, have ever been condemned in all free government."

"If there is one thing which more than another," says Justice Shiras in *Baltimore, etc., R. Co. v. Voigt,* 176 U. S. 498, 505, 20 Sup. Ct. 385, 44 L. Ed. 560, "public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and volun-

tarily, shall be held sacred, and shall be enforced by courts of justice."

Is the statute in question a reasonable regulation and reasonable in its operation upon the persons whom it affects? The contract prohibited affects employer and employe alike. If the master can employ only upon terms of weekly payment, the workman can find employment on no other terms. It will be observed that the statute gives the parties no choice —no right to waive the provisions of the law. The language is, every person, company, or corporation, employing any person to labor shall make weekly payments for the full amount due for such labor, and the chief inspector, or any person interested, may bring suit in the name of the State against any person, company, or corporation that neglects or refuses to comply within ten days after such payment is due and left unpaid.

The obvious intention of the legislature was to make contracts for persons that they would not in all cases make for themselves, and to forbid the making of contracts that they would make. The laborer may be the chief sufferer. His labor may be the only means of supplying himself and family, but by this law he is denied the right to work, and another the right to employ him, unless he can be paid once a week. Any law or policy that disables the citizen from making a contract whereby he may find lawful, needed, and satisfactory employment is unreasonable.

It may be that the workman will desire and request his employer, as conducive to economy and saving, to keep back all wages not needed for current necessities. Whether he leaves his surplus earnings with his employer, or deposits them with the building and loan association, or with the savings bank, involves no public interest and affects no public concern. Yet, according to this statute, if, in a fair and open agreement the employer "neglects or refuses" to pay the full amount earned for a period of ten days after due, the chief inspector may, if he disapproves the arrange-

ment (and upon his failure to act any citizen of the State may sue), without the consent and even over the protest of the workman, in the name of the State, not only compel payment, but mulct the employer in a fifty *per centum* penalty for making an honest effort to favor his employe. The statute places the wage-earners of the State under *quasi* guardianship. It classes them with minors and other persons under legal disability, by making their contracts void at the pleasure of a public officer. It tends to degrade them as citizens, by impeaching their ability to take care of themselves. It is paternalism, pure and simple, and in violent conflict with the liberty and equality theory of our institutions. It is no argument to say that our assumption is unreasonable, and that the inspector is not likely to interfere in such cases. Whether he will or not is unimportant. In discussing the constitutionality of the act in question, it is to be determined not by what has been done or is likely to be done under it, but what may be done under and by virtue of its authority.

We do not assert that the legislature is powerless to regulate the payment of wages when the same are paid at unreasonable periods, or that a community composed largely of workingmen may be injuriously affected by unduly delayed payments, for these questions are not before us; but what we do hold is that this statute which takes away from both the employer and the employe, whether in the shop, in the store, or on the farm, all power to contract for labor, except upon terms of weekly payment of wages in cash, is an unreasonable, and therefore an unconstitutional restriction.

It is also contended, that appellant, being an employer and not an employe, can only raise such questions as involve the rights of employers, and that the constitutional right of a laborer to contract to do lawful work upon terms satisfactory to him can not be questioned or appropriated by an employer as a defense, thus applying to contracting

parties the rule affirmed in *Pittsburgh, etc., R. Co.* v. *Montgomery,* 152 Ind. 1, 13, 71 Am. St. 301, and many other cases. We are unwilling to admit that this is a proper case for the application of the rule, since we are unable to see how the result may be different, whether the laborer is disqualified from entering into a contract of employment, or the employer disqualified from making it. In either view the contract which the parties desire to make is prevented, and both parties mutually and equally affected by the interdiction.

We would not be understood as holding that the freedom of contract is wholly beyond legislative control. There are many instances in which restraint may be properly imposed, but in each and every one the relation to some public benefit must be clearly discernible. Certain contracts are required to be in writing, manifestly to promote public morals by removing the temptation to perpetrate frauds by perjury. A householder is disqualified from withdrawing in advance from those dependent upon him, the benefits of the exemption laws, and thus prevented from imposing upon the public the burden of their sustenance. Statutes limiting the rate of interest are valid, as preventing unconscionable extortion; and so on through a long list that might be given, each showing a logical and an appropriate relation to the promotion or protection of some interest of society.

The cases of *Opinion of the Justices,* 163 Mass. 589, 40 N. E. 713, 28 L. R. A. 344, *State* v. *Brown, etc., Mfg. Co.,* 18 R. I. 16, 25 Atl. 246, 17 L. R. A. 856, and *Skinner* v. *Garnett, etc., Co.,* 96 Fed. 735, cited by the Attorney-General as sustaining his contention, can not be accepted as controlling precedents. The Massachusetts case is not an adjudication at all, but the uncontested answer of the justices of the supreme court to a question propounded to them by the house of representatives, which we quote: "Is it within the constitutional power of the legislature to extend

the application of the present law, relative to the weekly payment of wages by corporations, to private individuals and partnerships?" The premise upon which the answer of the justices is constructed, is indicated in the opening lines as follows: "Your question implies that in your opinion the present law relating to the weekly payment of wages by certain corporations to their employes, is constitutional, and your inquiry is whether it is within the constitutional power of the legislature, to extend the law to private individuals and to partnerships?" The question before the justices was not the constitutionality of the law as it existed, but assuming that the statute was valid as it applied to corporations, was it constitutional to extend its provisions to individuals and partnerships? Moreover, it is expressly noted by the justices that the power granted the legislature by the constitution of that state is more comprehensive than that found in the constitutions of some of the other states, and the provision pointed out and relied upon as supporting the view expressed is radically different and broader than the provisions of the Indiana Constitution. The Rhode Island case is even less a precedent, because it rests upon the theory that the statute was but an amendment to the charter of a corporation under the reserved power of the legislature to amend. The Skinner case is of little value, (1) because it involves the payment of wages monthly; and (2) because the decision of Judge Morrow turns on substantially the same grounds as the Rhode Island case.

Similar statutes are held to be unconstitutional in the following cases: *Braceville Coal Co.* v. *People* (weekly payment), 147 Ill. 66, 35 N. E. 62, 22 L. R. A. 340, 37 Am. St. 206; *Commonwealth* v. *Isenberg* (biweekly payment), 4 Pa. Dist. Rep. 579; *San Antonio, etc., Co.* v. *Wilson* (biweekly payment), 4 Tex. App. Civ. Cas. 565, 19 S. W. 910. The following cases are also instructive upon the general subject: *State* v. *Fire Creek, etc., Co.,* 33 W. Va,

188, 10 S. E. 288, 6 L. R. A. 359, 25 Am. St. 891; *God-charles* v. *Wigeman,* 113 Pa. St. 431, 6 Atl. 354; *State* v. *Loomis,* 115 Mo. 307, 22 S. W. 350, 21 L. R. A. 789.

The foregoing conclusions lead us to conclude that the act in controversy, so far as it relates to the question herein involved, is a violation of §1, article 1, of the state Constitution, commonly known as the bill of rights, and of the fourteenth amendment to the federal Constitution, denying a state the power to deprive a person of life, liberty, or property without due process of law, and the demurrer to the complaint should have been sustained.

Judgment reversed, and cause remanded, with instructions to sustain appellant's demurrer to the complaint.