[Crim. No. 406.   Fourth Appellate District.—January 29, 1937.]

In the Matter of the Application of ED. MOFFETT, Petitioner for a Writ of Habeas Corpus.

George A. Work for Petitioner.

Walter C. Haight, District Attorney (Tulare County), W. G. Machetanz and Virgil C. Dowell, Deputies District Attorney, Charles Dreyfus, Leo L. Schaumer and Arthur L. Johnson, for Respondent.

MARKS, J.—This is a proceeding in *habeas corpus* to secure the release of petitioner from confinement by the sheriff of Tulare County, under a judgment of a justice of the peace sitting in Orosi township in that county, finding him guilty of violation of the provisions of sections two and four of an act which for convenience we will refer to as the Semi-Monthly Pay Day Law. (Stats. 1919, chap. 202, as amended.)

The case has been before us twice before: *In re Moffett,* 12 Cal. App. (2d) 320 [55 Pac. (2d) 584], when we ordered the discharge of petitioner; and *In re Moffett,* 13 Cal. App. (2d) 741 [57 Pac. (2d) 538], where it was made to appear that no service of the application for the writ had been made on the district attorney of Tulare County, as required by section 1475 of the Penal Code. In the latter case we reached the conclusion that we had no power to proceed because of the lack of service on the district attorney. Consequently, we vacated and set aside our former order and judgment discharging petitioner and exonerating his bail. That petition was dismissed, the petitioner was surrendered and this proceeding followed.

In the first proceeding the respondent sheriff was not represented by counsel and filed only a most informal return. Here he is represented by counsel who have filed a formal return, an amended return, and an able and exhaustive brief.

The facts set forth in the petition may be briefly summarized as follows: The Southern Sierra Pine Company is a partnership of which petitioner was the managing member. It was organized for the manufacture of lumber, with its place of business near the town of Cutler in Orosi township, Tulare County. The partnership had insufficient capital with which to pay its operating expenses, and, therefore, entered into a contract with each of its employees whereby they were to work at a compensation measured in money but not to

be paid on any fixed or regularly recurring dates, but only when the lumber could be sold and out of the proceeds of such sales as the money was collected. On May 12, 1935, Ralph Goodwin was employed under such an express contract at a compensation of fifty cents an hour which was increased on July 1, 1935, to fifty-five cents an hour. Goodwin was not discharged but voluntarily left the employ of the partnership on August 31, 1935. He had earned $431.31, had been paid $308.50 during his employment, and $7 after he had quit, leaving a balance of $115.81 unpaid on October 22, 1935, the time when the complaint was filed in the justice's court. At that time there were several thousand dollars' worth of manufactured lumber unsold in the yards of the partnership.

The amended return contains a certified copy of the commitment of petitioner, a certified copy of the statement on petitioner's appeal to the superior court, a certified copy of an order of the Superior Court of Tulare County affirming the judgment of conviction of petitioner in the justice's court and dismissing his appeal.

The complaint filed in the justice's court contained three counts, on each of which petitioner was found guilty and sentenced to serve four months' imprisonment in the county jail of Tulare County, sentences on each to run concurrently. The first count alleged that on July 25, 1935, petitioner continued to employ one or more workers in and about the sawmill without maintaining semi-monthly, or two monthly pay days, and particularly without paying such employees in full for their services for the previous semi-monthly period, on or about the last-mentioned date, as required by sections two and four of the Semi-Monthly Pay Day Law. (Stats. 1919, chap. 202, as amended.) Count two alleged that petitioner failed to post, and keep posted, in a conspicuous place at the place of employment, or elsewhere, where the employees could see it, or at the office or nearest agency for payment kept by the employer, any notice specifying any regular pay day, or pay days, as required by the same sections of the same law. The third count deserves no notice here. It does not charge a public offense.

Petitioner raises the same questions and cites about the same authorities in support of this petition that he used in support of his first. We decided the first case upon the

ground that the contract between the employer and his employee was made fairly and without any taint of fraud, deceit or oppression and did not come within the prohibitions of the Semi-Monthly Pay Day Law. Perhaps, after further careful consideration, it might be held that the contract appearing in the first case (12 Cal. App. (2d) 320) was not strictly a contract for the payment of wages, creating the simple relation of employer and employee, but rather a contract creating a fund out of which the compensation of the laborers might ultimately be paid. Without expressing any opinion on the correctness of the conclusion reached in that case, and without either approving or disagreeing with it, its reasoning cannot apply here because of the difference in the facts now before us. Then, the facts set forth in the petition were not denied and we assumed they were admittedly true. Now, they are disputed by the record and in the return filed by respondent. There is no traverse to this return nor is there any stipulation by which the petition may be considered as a traverse of the return. ■ Thus we have a record, which, on its face, shows that petitioner was convicted in the justice's court of Orosi township; that he appealed to the superior court and the judgment of the justice's court was affirmed; that he was held in custody by respondent under a commitment which appears to be legal and valid on its face.

An exactly similar situation was presented in the case of *In re Gutierrez*, 1 Cal. App. (2d) 281 [36 Pac. (2d) 712], and it was there said:

"The situation which is thus presented is, therefore, that we have here a return made by the officer to whom the writ was directed, which shows that the person on whose behalf the petition was filed was confined in the county jail of Imperial County by authority of a commitment issued by the justice of the peace of Brawley Township, which commitment appears to be legal and valid on its face and that there is no denial of the allegations contained in said return and in the affidavit of the justice of the peace thereto attached. These facts would justify a prompt discharge of the writ heretofore issued by the court. The function of the petition for a writ of *habeas corpus* is to secure the issuance of the writ and when the writ has issued the petition has accomplished its purpose. The writ requires a return by the of-

ficer or other person who has the custody of the prisoner. To the return the petitioner may present exceptions, raising questions of law, or a traverse, raising issues of fact, or both. (*In re Collins*, 151 Cal. 340 [90 Pac. 827, 91 Pac. 397, 129 Am. St. Rep. 122]; *In re Delgado*, 107 Cal. App. 688 [290 Pac. 589].) Here the petitioner has neither presented legal exceptions to the return nor has he denied the allegations of the return. Under the established rules of this procedure we have therefore a return of the officer to whom the writ was directed, which shows that at the time the prisoner was released on bail by order of this court he was holding him in custody by virtue of the authority of a valid legal commitment and no exception raising questions of law has been made to such return and no denial of the facts set forth in the return has been presented.'' See, also, *In re O'Leary*, 127 Cal. App. 183 [15 Pac. (2d) 761]. The same condition appears in the instant case and furnishes ample reason for our discharging the writ and remanding petitioner to custody, if a public offense is charged, and if the Semi-Monthly Pay Day Law is constitutional.

If, however, we should treat the failure to traverse the return merely an admission of the facts set forth in the return, then it is also clear that the reasoning of our first decision, assuming it to be correct, cannot be controlling here. That decision was based upon the assumption that the contract alleged in the petition was the actual contract between the employer and the employee. In the statement on appeal to the superior court, after reciting the contention of petitioner on the substance of the contract, it is said that ''This testimony and plan was denied by all the witnesses for the People on cross-examination.'' Thus it would appear that there was a conflict of evidence on the question of the terms of the contract, which conflict was decided by the justice of the peace adversely to the contention of petitioner. As was said in *In re Cutler*, 1 Cal. App. (2d) 273 [36 Pac. (2d) 441]:

''The function of the writ of *habeas corpus* is to inquire into the jurisdiction of the court out of which the process whereby an accused is being held issued. (*In re Vitalie*, 117 Cal. App. 553, 557 [4 Pac. (2d) 171]; *In re Martin*, 132 Cal. App. 64, 66 [22 Pac. (2d) 269].) It may not be made a vehicle for the consideration of alleged errors where a con-

viction has been had and the commitment is in due form, nor to subserve the office of a motion in arrest of judgment. (*In re Stambaugh*, 117 Cal. App. 659 [4 Pac. (2d) 270]; *In re Martin, supra.*) Certainly it may not be utilized as a method of considering the question of the alleged insufficiency of the evidence. (*In re Jacobs*, 175 Cal. 661 [166 Pac. 801]; *In re Horr*, 177 Cal. 721 [171 Pac. 801]; *In re Williams*, 183 Cal. 11 [190 Pac. 163]; *In re Gutierrez*, 46 Cal. App. 94 [188 Pac. 1004]; *In re Kaster*, 52 Cal. App. 454 [198 Pac. 1029]; *In re Trauger*, 88 Cal. App. 59 [262 Pac. 780]; *In re Hall*, 88 Cal. App. 212 [263 Pac. 295]; *In re Samaha*, 130 Cal. App. 116 [19 Pac. (2d) 839].)''

Therefore, we must conclude that the contract alleged by petitioner was not in fact made, but that a contract was made which created the simple relation of employer and employee, that it was usual in its terms and was made under the terms of the Semi-Monthly Pay Day Law governing such a contract.

We have, perhaps, gone beyond the proper scope of our inquiry, in a proceeding of this nature, in considering the substance of the statement on appeal showing a conflict in the evidence, when the contents of such a statement should only be used to determine the question of whether the justice's court exceeded its jurisdiction. (*In re Gottschalk*, 47 Cal. App. 260 [190 Pac. 649]; *Garrett* v. *Superior Court*, 79 Cal. App. 273 [249 Pac. 871].)

The only questions remaining to be considered are (1) whether counts one and two of the complaint sufficiently allege violations of the Semi-Monthly Pay Day Law and state facts sufficient to constitute public offenses, and, (2) the constitutionality of the two sections of the act in question. Under the provisions of section 1426 of the Penal Code, count one sufficiently alleges a violation of the provisions of section two of the Semi-Monthly Pay Day Law, and count two sufficiently alleges a violation of section four. Therefore, if those sections are constitutional the complaint is sufficient against the attack here made.

Here, as before, petitioner relies upon the alleged unconstitutionality of the Semi-Monthly Pay Day Law as interfering with the free right to contract. The most important cases he relies upon in his attack on the constitutionality of the questioned provisions of the act are reviewed in

our first opinion (12 Cal. App. (2d) 320). There is, therefore, no reason to repeat that review here. We will confine ourselves principally to a consideration of the position taken by respondent in supporting the constitutionality of the act.

The second section of the Semi-Monthly Pay Day Law requires an employer of nonexempted labor to maintain two regular pay days each month, to be fixed by the employer to suit his convenience, subject to the restriction that the pay day for wages earned between the first and the fifteenth, inclusive of any calendar month, must be between the sixteenth and twenty-sixth of the same month, and that the pay day for services rendered between the sixteenth and the last days, inclusive of a calendar month, must be between the first and tenth of the following month. We think this a reasonable construction to be placed upon the provisions of this section which avoids the objections raised in *In re Crane*, 26 Cal. App. 22 [145 Pac. 733], to the provisions of the Act of 1911 (Stats. 1911, p. 1268) and which resulted in holding that act unconstitutional. The rule is too elemental to need supporting citations of authorities that where an act reasonably can be so construed that it can be held constitutional it is the duty of the courts to put such a construction upon it. Thus we conclude that the sole purpose of section two of the act in question is to require an employer of labor who comes within its terms to maintain two regular pay days each month, within the dates required in that section. We also conclude that as count one of the complaint specifically referred to that section and the penalty incorporated in section four for its violation, that the failure to maintain two regular pay days each month is the only offense charged in count one of the complaint.

It will be observed that section two does not attempt to fix a maximum or minimum wage to be paid, nor does it leave to a commission or any other body the right to fix wages or hours of labor. It does not attempt to limit the hours or conditions of labor nor interfere with the freedom of contracts on these subjects. These matters are left to the unrestrained agreement of the contracting parties. Thus it is apparent that such cases as *Adkins* v. *Children's Hospital*, 261 U. S. 525 [43 Sup. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238]; *Morehead* v. *People of the State of New York*, 298

U. S. 587 [56 Sup. Ct. 918, 80 L. Ed. 1347, 103 A. L. R. 1445], and *Ex parte Kuback*, 85 Cal. 274 [24 Pac. 737, 20 Am. St. Rep. 226, 9 L. R. A. 482], are clearly distinguishable and cannot be controlling here.

The states are prohibited by the Fourteenth Amendment to the federal Constitution from passing any law depriving any person of his property without due process of law. Sections one and thirteen of article I of the state Constitution guarantee to each person the right of enjoying and defending life and liberty, and of acquiring, possessing and protecting property, and prohibit the state from depriving a person of property without due process of law. The right to make a contract concerning his business, or wages to be received or paid, is a part of the liberty of the individual, as well as a property right protected by the federal and state Constitutions. (See cases cited in *In re Moffett*, 12 Cal. App. (2d) 320 [55 Pac. (2d) 584].) Still the right of liberty, the right of property, even the right of life itself, is not absolute in the individual. Life may be forfeited to the state for a crime committed, and may be demanded by the nation in its defense and at its command in time of national danger. Liberty of movement of the person may be circumscribed and limited by law when public welfare demands. Under the police powers of the state private property may be damaged or destroyed without compensation when such action is essential to the protection of the safety, peace, health, morals or welfare of the general public. (*Patrick* v. *Riley*, 209 Cal. 350 [287 Pac. 455]; *Graham* v. *Kingwell*, 218 Cal. 658 [24 Pac. (2d) 488]; *In re Yun Quong*, 159 Cal. 508 [114 Pac. 835, Ann. Cas. 1912C, 969]; *Coelho* v. *Truckell*, 9 Cal. App. (2d) 47 [48 Pac. (2d) 697]; *Lawlon* v. *Steele*, 152 U. S. 133 [14 Sup. Ct. 499, 38 L. Ed. 385]; *Adams* v. *Milwaukee*, 228 U. S. 572 [33 Sup. Ct. 610, 57 L. Ed. 971]; *Miller* v. *Schoene*, 276 U. S. 272 [48 Sup. Ct. 246, 72 L. Ed. 568].) Thus the constitutional guarantees of life, liberty and property are not absolute in the individual, but are always circumscribed by the requirements of the public good.

Numerous laws have been passed affecting hours or conditions of labor, or the time of payment and medium of exchange used in the payment of the wages of an employee by his employer. The decisions on the legality of these enactments have been far from uniform and present an irrecon-

cilable conflict. Among those decisions which hold, for various reasons, such enactments unconstitutional are: *Adkins* v. *Children's Hospital, supra; Morehead* v. *People of the State of New York, supra; Ex parte Kuback, supra; Godcharles* v. *Wigeman,* 113 Pa. 431 [6 Atl. 354] ; *Millett* v. *People,* 117 Ill. 294, 295 [7 N. E. 631, 57 Am. Rep. 869] ; *Frorer* v. *People,* 141 Ill. 171 [31 N. E. 395, 16 L. R. A. 492] ; *Braceville Coal Co.* v. *People,* 147 Ill. 66 [35 N. E. 62, 37 Am. St. Rep. 206, 22 L. R. A. 340] ; *State* v. *Loomis,* 115 Mo. 307 [22 S. W. 350, 21 L. R. A. 789] ; *Republic Iron & Steel Co.* v. *State,* 160 Ind. 379 [66 N. E. 1005, 62 L. R. A. 136] ; *State* v. *Goodwill,* 33 W. Va. 179 [10 S. E. 285, 25 Am. St. Rep. 863, 6 L. R. A. 621].) In *Ex parte Kuback, supra,* the Supreme Court of this state held unconstitutional an ordinance of the city of Los Angeles limiting the hours of labor required of an employee on work being performed under a municipal contract.

The case of *Johnson* v. *Goodyear Mining Co.,* 127 Cal. 4 [59 Pac. 304, 78 Am. St. Rep. 17, 47 L. R. A. 338], is cited as an authority supporting the rule that a statute which provided that wages must be paid an employee at least once each month was unconstitutional. An examination of that case shows that the Supreme Court had before it the constitutionality of a statute (Stats. 1897, p. 231) which provided that every corporation doing business in this state (1) shall pay each employee his wages once each month, (2) each employee not so paid shall have a lien upon the corporate property for his unpaid wages, and, that (3) a judgment be given for reasonable attorney's fees in an action to collect unpaid wages. The plaintiff in that case was the assignee of wages of the employees of defendant. The trial court gave him judgment for $5,039.57, the amount of the unpaid wages, $400 attorney's fees and declared the amounts secured by a first lien on defendant's property. In a vigorous opinion written by Mr. Commissioner Cooper, much was said which would lead to the conclusion that the monthly wage payment provisions of the act were unconstitutional. However, the commissioners recommended that the "portion of the judgment in favor of plaintiff and against the defendant corporation for five thousand and thirty-nine dollars and fifty-seven cents, with costs, should be affirmed. The portion awarding the plaintiff four hundred dollars attorney's fees, and declar-

ing that the plaintiff is entitled to a lien upon the property of defendant corporation and to have a commissioner appointed to sell the property, should be reversed''. This recommendation was adopted in department and a hearing in bank was denied. Thus, if the case is authority at all, it is authority for the conclusion that the monthly wage payment provisions of the act were constitutional, and only the provisions for the lien and attorney's fees were unconstitutional.

In the case of *In re Ballestra,* 173 Cal. 657 [161 Pac. 120], the Supreme Court had before it the constitutionality of an act passed on June 5, 1911, and amended in 1915 (Stats. 1915, p. 1215) section one of which provided in part as follows:

''No person, firm or corporation shall issue, in payment of or as an evidence of indebtedness for wages due an employee, any order, check, memorandum, or other acknowledgment of indebtedness, unless the same is negotiable, and is payable upon demand without discount in cash at some bank or other established place of business in the state; and no person, firm or corporation shall issue in payment of wages due, or wages to become due an employee, or as an advance on wages to be earned by an employee, any scrip, coupons, cards or other thing redeemable in merchandise or purporting to be payable or redeemable otherwise than in money.''

The Supreme Court upheld the act as a valid exercise of the police powers of the state and said:

''In considering this statute we may presume, in support of the legislative enactment, that some employers in this state had adopted and followed the custom of paying the daily, weekly, or monthly wages of their employees, when due, by giving orders for the amount thereof payable only in goods, or orders of an indefinite nature not payable on demand, but at some future time. The purpose of the statute evidently is to prevent the evils which the legislature believed had arisen from such practices.

''The right to make contracts, like other personal and property rights, is subject to reasonable regulation designed and calculated to promote the general convenience, prosperity, and welfare. (*Mutual Loan Co.* v. *Martell,* 222 U. S. 225, 232 [Ann. Cas. 1913B, 529, 32 Sup. Ct. 74, 56 L. Ed. 175].) Laws having a reasonable tendency to accomplish these re-

sults, and not imposing unreasonable burdens upon individuals, are valid. The provisions of the statute in question do not transgress this rule. As applied to ordinary transactions between employers and employees, of the kind embraced within its terms, the statute is, in our opinion, valid and constitutional."

Section six of the Semi-Monthly Pay Day Law was upheld as a constitutional exercise of the police powers of the state in *In re Oswald,* 76 Cal. App. 347 [244 Pac. 940]. To the same effect are *In re Samaha,* 130 Cal. App. 116 [19 Pac. (2d) 839], *Sears* v. *Superior Court,* 133 Cal. App. 704 [24 Pac. (2d) 842], and *In re Sears,* 137 Cal. App. 308 [30 Pac. (2d) 571].

In the state of Vermont a law was passed requiring certain corporations to pay their employees weekly. Its constitutionality was upheld under both the reserved power of the state over corporations and the general police powers of the state. (*Lawrence* v. *Rutland R. Co.,* 80 Vt. 370 [67 Atl. 1091, 13 Ann. Cas. 475, 15 L. R. A. (N. S.) 350].) (See, also, *Shaffer & Munn* v. *Union Mining Co.,* 55 Md. 74; *Opinion of Justices,* 163 Mass. 589 [40 N. E. 713, 28 L. R. A. 344].)

A law was passed in Tennessee requiring employers of labor who paid their employees in certain evidences of indebtedness to redeem the orders in cash within a fixed time. In *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13 [22 Sup. Ct. 1, 46 L. Ed. 55], this law was held to be a valid exercise of the police powers of the state.

A statute was adopted in Arkansas providing that laborers in coal mines who were paid on the basis of quantities of coal mined, should be paid on the basis of the quantities of unscreened coal and not on the quantities after screening. This was held valid under the police powers of the state. (*McLean* v. *Arkansas,* 211 U. S. 539 [29 Sup. Ct. 206, 53 L. Ed. 315].)

The Congress passed a law making it unlawful to pay any seaman his wages in advance of the time when he should have actually earned the same. In *Patterson* v. *Bark Eudora,* 190 U. S. 169 [23 Sup. Ct. 821, 46 L. Ed. 1002], the enactment was held constitutional, and, further, that an advance payment of wages would not relieve the master or owner from the obligation of paying those same wages when they became due.

In 1915 the Congress passed an act permitting seamen on certain vessels to demand one-half their earned wages in each United States port which the vessels touched. This law was held constitutional in the case of *Strathearn S. S. Co., Ltd.*, v. *Dillon*, 252 U. S. 348 [40 Sup. Ct. 350, 64 L. Ed. 607].

The state of Missouri adopted a law requiring all corporations doing business in that state to pay the wages of their employees at least semi-monthly. The Supreme Court held the law a constitutional exercise of the police power of the state. (*State* v. *Missouri Pac. R. Co.*, 242 Mo. 339 [147 S. W. 118].) In this decision it is interesting to note that the earlier case of *State* v. *Loomis, supra,* is considered, and is neither expressly overruled, nor very clearly distinguished.

The state of New York passed a law requiring certain employers of labor to pay their employees in cash weekly and that "every person or corporation operating a steam surface railroad shall on or before the first day of each month, pay the employees thereof the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month pay the employees thereof the wages earned by them during the last half of the preceding calendar month". (Consol. Laws, chap. 31, sec. 11.) In legal effect this law is comparable to the provisions of section two of the California Semi-Monthly Pay Day Law. The court of appeals of New York upheld the enactment under the reserved power of the state over corporations. (*New York Cent. & H. R. R. Co.* v. *Williams*, 199 N. Y. 108 [92 N. E. 404, 139 Am. St. Rep. 850, 35 L. R. A. (N. S.) 549].)

The same question was before the same court in the case of *Erie Railroad Co* v. *Williams*, 199 N. Y. 525 [92 N. E. 1084], and the same result was reached without opinion on authority of the New York Central case. The Erie Railroad Company case went to the Supreme Court of the United States. (*Erie R. Co.* v. *Williams*, 233 U. S. 685 [34 Sup. Ct. 761, 58 L. Ed. 1155, 51 L. R. A. (N. S.) 1097].) There the decision of the court of appeals of New York was upheld on the grounds stated in its opinion, and on the further ground that the New York statute was a reasonable exercise of the police powers of the state. In commenting on the latter question the Supreme Court of the United States said:

"It is, however, contended by plaintiff, that the law under review cannot be sustained either as an exertion of the police power or as an alteration of the charter of plaintiff, unless the court can say from a comparison of the systems of payment—monthly and semimonthly—that the former affects adversely the general welfare or public good, and the latter 'remedies that evil or condition, and of itself does not constitute an unjust burden upon the employer'. But whether the law imposes an unjust burden depends upon its validity, and whether the public welfare is subserved by one system or the other is, as we have said, in the first instance, for the legislature to determine, and its judgment will not be reviewed unless 'unmistakably and palpably in excess of legislative power'. (*McLean* v. *Arkansas, supra.*) The labor law of New York cannot be so characterized.

"There are certainly advantages of cash payment over deferred payments, and an advantage to those who work for a living of a ready purchasing power for their needs over the use of credit. This is found as a fact by the trial court, and even if there is no affirmative evidence of it, it is the expression of experience."

After a review of the authorities we have reached the conclusion that the provisions of section two of the Semi-Monthly Pay Day Law constitute a valid exercise of the police powers of the state and that the section is a constitutional enactment. It does not really attempt to limit the freedom of master and servant in agreeing upon the terms of employment. It merely says, in effect, to the employer, that in the performance of his part of the contract he must maintain two pay days during each calendar month. This requirement cannot be distinguished in principle from the statute, upheld by inference, and the final judgment in *Johnson* v. *Goodyear Mining Co., supra,* requiring an employer to pay his employees once each month. Nor can it be distinguished in principle from the enactment in question in *In re Ballestra, supra,* requiring that an employee be paid in cash, or a medium of exchange immediately convertible into cash. Further, the authorities already cited upholding the constitutionality of section six of the act furnish strong arguments for concluding that section two is constitutional.

Having reached the conclusion that section two of the act is constitutional we find no difficulty in reaching the same

conclusion as to section four, although no authorities have been cited, and we can find none on the precise question presented. If the legislature may provide that an employer must maintain two pay days each month, no objection can be found to the requirement that he post notices of such pay days so that his employees and the public may be informed of them. Every argument supporting the constitutionality of section two applies with equal force to the support of the validity of section four of the act.

We have expressed our opinion that the third count of the complaint does not state facts sufficient to constitute a public offense. This furnishes no ground for the release of petitioner as he must serve the sentences imposed on his convictions under the two valid counts.

The writ is discharged and petitioner is remanded to the custody of the sheriff of Tulare County.

Barnard, P. J., and Jennings, J., concurred.