# CHARLESTON.

S. W. BUCHANAN *v.* LOUISVILLE COAL & COKE COMPANY. . .

(No. 5209.)

Submitted March 10, 1925.        Decided March 17, 1925.

1.  CUSTOMS AND USAGES—*Evidence of Custom Not Admissible to Attach to Word Meaning Other Than One Given by Statute.*

    If a statute has given a definite meaning to any particular word no evidence of custom will be admitted to attach any other meaning to it. (p. 472).

    (Customs and Usages, 17 C. J. §36.)

2.  CONTRACTS—*In Absence of Special Contract, Statutory Definition of Ton Controls Contract for Coal Mining.*

    Under Section 27, Chapter 59, Barnes' Code, providing that "a ton shall contain two thousand pounds", in a contract for mining coal, in the absence of a special contract showing that the parties contracted with reference to a gross ton of two thousand two hundred and forty pounds, as a basis for compensation, the statute will control. (p. 472).

    (Contracts, 13 C. J.)

    (NOTE:—Parenthetical references by Editors. C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Proceeding by notice of motion for judgment by S. W. Buchanan against the Louisville Coal & Coke Company. Judgment for plaintiff and defendant brings error.

*Affirmed.*

*Hartley Sanders,* for plaintiff in error.
*W. H. Malcolm,* for defendant in error.

WOODS, JUDGE:

The judgment complained of on this writ of error, was recovered on notice of motion for judgment.

Buchanan, the plaintiff below, entered into an oral contract with the Louisville Coal & Coke Company, through its duly authorized agent, to do "outcrop" mining for coal on a certain lease in Mercer County, for which he was to receive $1.35 per ton for all coal mined by him. It was admitted that nothing was said regarding the weight of a ton at the time of the contract. Plaintiff's contention on his motion for judgment was that he was employed upon a net ton basis of 2,000 pounds, while the defendant company alleged that according to the usage and custom of that particular section they employed him upon a gross ton basis of 2,240 pounds, and that they paid him accordingly. In the evidence the account of the plaintiff was calculated in two parts: (1) the amount due him prior to February 1, 1922, and (2) the amount due after and including that date. The net tonnage (4187 tons of 2,000 pounds each) for the first period, at $1.35 per ton, amounted to $5,655.95; while the same tonnage, reckoned on a gross ton basis (3747 2/3 tons of 2,240 pounds each) amounted to $5,069.35, or a difference of $596.60. The net tonnage for the second period, beginning February 1st, 1922, and continuing to the time that plaintiff ceased to work for the defendant company (3918 12/20 tons of 2,000 pounds each) at $1.05, amounted to $4,114.53; the same tonnage on the basis of 2,240 pounds to a ton amounted to $3,673.68, making a difference of $440.85. Plaintiff claims that he is entitled to both the $596.60 and the $440.85 under his construction of the contract. At the time of the change in rates, February 1, 1922, the defendant coal company, notified the plaintiff by letter to the effect that the coal was to be mined by him at "$1.05 per gross ton." The jury evidently adopted the view that this letter served as notice to the plaintiff that he would be paid at the rate of $1.05 per 2,240 pounds for all coal thereafter mined under his contract, and returned a verdict for $596.60, the amount claimed by the plaintiff for the first period, disallowing his

claim for the second period. This verdict leaves only such questions for consideration by this Court as relate to the compensation of the plaintiff for coal mined under the contract existing prior to February 1, 1922.

The parties litigant in this case are in controversy over a single question of very narrow limits arising out of the construction of the verbal contract on which the plaintiff bases his account. There is in fact but six exceptions by counsel for the coal company to a single ruling of the court, in the instant case, or what might properly have been embraced in one ruling. The offer, with its variations, was to prove a custom, among the coal mines, of the character of that owned by the defendant company, making the ton 2,240 pounds. The proposed evidence was rejected by the trial court, and the defendant company assigns this action of the court as error. "The usages and customs of a particular trade or business are presumed to be known to those engaged therein. These may, therefore, in the absence of any express stipulation inconsistent therewith, be supposed to have entered into the understanding of the parties making the contract. They furnish most valuable aid in arriving at the mutual assent of the parties, and when not contrary to law are admissible in evidence. Green. on Ev. (2nd Ed.) 251. Aside from the clause "when not contrary to law," this is the rule that the plaintiff in error in the instant case seeks to invoke. Many decisions are cited to support the doctrine that usages and customs may be admissible in evidence in certain cases. But do they apply here? Note that the rule we have just stated from Greenleaf makes such evidence admissible when not contrary to law. The rule is stated: "If a statute has given a definite meaning to any particular word no evidence of custom will be admitted to attach any other meaning to it." 17 C. J. 476, and numerous cases therein cited sustaining this doctrine. Section 27, chapter 59, Barnes' Code, expressly directs that "a ton shall contain two thousand pounds." The contract under consideration must be regarded as having been agreed to with reference to it, in the absence of any agreement to the contrary. The statute entered into the contract and formed an essential part of it.

This is the current of the decisions in American courts.   We find a case directly in point.   It is that of *Godcharles* v. *Wigeman*, (Penn.), 6 Atl. 354.   Here, Godcharles was engaged in rolling iron and manufacturing nails.   He posted in a conspicuous place in his mill a set of rules, in accordance with the general custom among rolling mills, providing, *inter alia*, that the price of puddling would be $4.00 per ton of 2,240. After these rules had been posted, defendant Wigeman sought employment at the said mill, and was assigned to a furnace as a puddler, and, during the entire time of his employment, these rules were kept posted.   During all the time of defendant's employment Godcharles had regular monthly payments, on which day he furnished each employee with an envelope containing a statement of the amount of his wages for that month.   These envelopes defendant had received every pay day up to the time he left the employment of Godcharles. Suit was brought by Wigeman to recover payment for puddling at the rate of $4.00 for a ton of 2,000 pounds.   Upon the trial the court refused to permit Godcharles to prove that, "it is the universal custom in Pennsylvania, among mills of this character to have rules regulating the terms upon which puddling is done."   The court held that: "A custom among iron mills making a ton of 2,240 pounds is not good when opposed to a statute which fixes the legal ton at 2,000 pounds.   In order to bind one by such custom it is necessary to prove a special contract, or such knowledge by him of the rules of the establishment as would raise the presumption that he was bound thereby."   In this case Godcharles made a stronger defense than is made here by the defendant coal company, in that he posted and kept posted the rules of his establishment. Yet the court directed a verdict and judgment for the plaintiff against Godcharles.   The statute of Pennsylvania provided, as does our statute, that "twenty hundreds shall make one ton."   The reason for the rule to refuse to allow custom to overrule a statute is apparent.   The doctrine is too well established to make citation of authorities necessary, that particular customs cannot be given in evidence to change the common law.   And the reason is stronger that such evidence will not be admitted to vary the construction put upon a particular

word, or term, by statute.   Considering the commercial spirit of the age, it is of great importance to furnish a standard of weights and measures which shall be uniform throughout the state, and which shall be binding upon all men within our jurisdiction.   If every section may have its own weights and measures, to be established by its own custom no one could know with certainty the extent of his obligation.   Such customs would frequently depend upon the opinion of witnesses and juries drawn from sections of the country inhabited chiefly by the parties who had an interest in establishing them in a particular way.   Uncertainty would produce constant litigation.   It may be contended that our statute in defining the word "ton" only embraces the buying and selling of a commodity.   Why differentiate?   In every transaction in which the weight of any commodity becomes a material element the statute becomes an integral part thereof.   If custom is to be relied on why did the defendant company in adopting its mining scale offered in evidence in this case, taking effect February 1st, 1922, deem it necessary to make "a gross ton of 2,240 pounds" the standard of measure?   Thus its own act recognized the necessity of a special contract.   The verdict of the jury, as we have stated, gave the defendant company the benefit of a special contract for the mining done after February 1st, taking it out of the statute, by virtue of the written notice served upon the plaintiff at that time.

For reasons heretofore stated it would have been error to admit the evidence of custom to control the statute, and to permit the jury on such evidence to find the contract to be different from its legal import.   The judgment is therefore affirmed.

*Affirmed.*