## Firmstone *et al.*, Garnishees, *versus* Mack.

*Justices of the peace and aldermen have no jurisdiction of an attachment execution against wages of labour or salaries.—Agreement to waive the proviso exempting wages from attachment, void.*

1. The civil jurisdiction of aldermen and justices of the peace, being created by statute, is to be limited within the statutory bounds, and measured strictly by the statute law.

2. Therefore, where the Act of Assembly, extending jurisdiction in attachment execution to aldermen and justices of the peace, expressly provided that wages of labourers and salaries should not be liable to attachment in the hands of the employer, the wages of labour and salaries must be regarded as excepted out of the grant, and jurisdiction in such cases withheld.

3. An agreement by a labourer to waive the proviso exempting wages from attachment, embodied in a promissory note, is void.

ERROR to the Common Pleas of *Northampton county*.

This was an attachment execution by William H. Mack against Patrick Sheahan and wife, in which William Firmstone and E. Rockwell, agents for Charles Jackson, Jr., were summoned as garnishees, and came into the Common Pleas on the appeal by the garnishee from the judgment of D. M. Chamberlin, a justice of the peace of Northampton county.

After the appeal was entered, the following case was stated for the opinion of the court below :—

The judgment given by Justice Chamberlin against Sheahan and wife, was in a suit upon a note which contained the following clauses, viz. :

"And further, for value received, we hereby waive all and singular the rights, benefits, and privileges of the Act of Assembly of the 9th of April 1849, which exempts from execution, &c., property to the value of $300—both as to real and personal estate now owned by us, or we may hereafter own. Also the Act of Assembly which exempts money due for labour done, from collection by attachment, and all other exemption laws now in force in this Commonwealth."

The money attached upon the aforesaid judgment in the hands of the garnishees, was the amount due Patrick Sheahan for wages as a labourer at the iron furnace of the garnishees.

If the court are of the opinion that the wages of Patrick Sheahan could be attached for the amount of the judgment obtained upon the note given as is above stated, or that the garnishee could not legally make the defence that the sum in his hands was not attachable, then judgment to be rendered in favour of the plaintiff for such sum as the court shall be of opinion the garnishee under his answer is legally bound to pay.

If the court are of a contrary opinion, then judgment to be rendered in favour of the appellant.

[Firmstone *et al. v.* Mack.]

The transcript to be a part of the case. The above stated case to be in the nature of a special verdict and subject to a writ of error.

On hearing the case the court below (MAYNARD, J.) directed the entry of judgment in favour of the plaintiff against the garnishees, and filed the following opinion :—

"The only question of law in this case is, whether a debtor can waive the right, privilege, or benefit secured to him in the proviso of the 5th section of the Act of 15th April 1845.

"The proviso reads as follows : 'Provided, however, that the wages of any labourers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer.'

"Before this enactment was passed, the wages of the labourer and salaries were liable to attachment, at the suit of their creditor.

"If the protecting privilege of the statute can be waived and is waived by the debtor, for whose benefit it was enacted, to him the statute becomes a dead letter ; to him it is no law.

"It was begotten for his benefit and brought into full life, but he has strangled it.

"That the privilege conferred upon the debtor, by the proviso of the statute, may be waived by him, we think has been clearly decided by our Supreme Court in several cases, where the same principle has been raised and ruled.

"In the case of Bowman *v.* Smiley, 7 Casey 225, one of the principal questions in the case was, whether the debtor could waive the privilege of the $300 exemption law."

"Justice Strong in delivering the opinion of the court says :— 'Notwithstanding the doubts which have sometimes been expressed, it is now generally conceded, that the statutory privilege of the exemption of a portion of his property from levy and sale under execution, is one which the debtor may waive. Where made at the time the debt is created, the waiver is based upon the same consideration, as that upon which rests the liability to pay, and is therefore irrevocable. Such a waiver is a contract that, so far as regards the judgment-creditor in whose favour it is made, the debt shall be collectable in the same manner as if the Act of 9th of April 1849 had never been passed.'

"The note on which the judgment in this case was obtained contains an express waiver of the 'rights, benefits, and privileges of the Act of Assembly, which exempts money due for labour done, from collection by attachment.'

"I am of opinion that the privileges and benefits of the proviso in the act referred to might be waived by the debtor, defendant. And that it was a *personal* privilege to the debtor, in which the garnishees in this case were in no manner interested, and had

[Firmstone *et al. v.* Mack.]

not the right to test the question by appeal against the attaching creditor.

"I do not think the privilege of the statute extends to the employer. But I am free to say, that in my judgment it ought to be so extended to protect them from liability to be brought into the courts to settle the wages of their labouring men. It is a great inconvenience for the owners of large manufacturing establishments, employing as they do, several hundred day labourers, to be liable to such inconvenience and expense, a portion of which they must lose.

"But the legislature only can remedy such inconveniences; the courts are powerless to do so.

"We direct judgment to be entered in this case in favour of the plaintiff against the garnishees for the amount admitted to be due in their answers to Patrick Sheahan, and in their hands, after deducting therefrom all the costs in the suit prior to the appeal, which costs are to be paid by them from the fund in their hands.

"The costs accrued subsequent to the appeal, to follow the judgment, and to be paid by the garnishees personally.

"The prothonotary is directed to ascertain the amount and enter judgment accordingly."

Which was the error assigned.

*M. H. Jones,* for plaintiff in error.—The question arises under the act relating to justices of the peace, passed 15th of April 1845, § 5, Purd. 604.

The plaintiffs in error, who are garnishees, are also the employers of defendant (a day labourer at the Glendon Iron Works), and the money attached is the amount due him for his wages in their hands.

The attachment execution issued the 5th of January 1864, on a judgment rendered by the justice against Patrick Sheahan and Anna his wife, for $53.16 and costs, $5.10 on a note dated September 1st 1860, signed by them, containing the provision mentioned in the case stated.

Can the garnishees of the defendant be held liable to an attachment for wages in their hands due the labourers at their iron works under this waiver?

The opinion of the court below in this case, rests upon the authority of Bowman *v.* Smylie, 7 Casey 225, an adjudication upon the Act of 9th April 1849. But the question here is not ruled by that decision.

A right to waive exemption for personal property in one's own possession, does not involve the right to waive exemption for wages in the hands of the employer.

This court in Heebner *v.* Chave, 5 Barr 117, point at the reason and difference. Nor has it been decided that this latter

right, covering wages in the hands of third persons, is a personal privilege in the debtor alone; the wording of the proviso in express terms makes the garnishees free from all liability in such case, and we submit that the court in Bowman *v.* Smylie did not pass in review before them the statute now in question.

It is a remedial statute in derogation of the common law, but with fixed limits through which the legislature speaks definitely and clearly, and as such it is a rule of action for this court to enforce according to its letter, spirit, and meaning over the subject of enactment.

It suggests in terms that the garnishee may have property of defendant even not subject to attachment, and it provides that wages in the employer's hands shall not be recoverable under it.

We urge that the waiver in the note does not cover the case; "money due for labour done," we may admit, is made attachable by the waiver, but wages in the hands of the employer is not. The defendant did not waive this privilege. The latter clause is "and all other exemption laws now in force in this Commonwealth," that is for "money due for labour done."

Pay is given to soldiers, salary and stipend to persons of rank, but wages to hirelings: Crabb's Eng. Synonyms 164.

The act uses the word "wages." The waiver has the words "money due for labour done." There is a difference between these two expressions. See Bouvier's Law Dict., *Wages.* It is the pay for a particular kind of service which has to do with a certain class of persons.

It is fixed by the day, week, month, or year: Crabb's Eng. Syn. 164; and to be paid him who earns it promptly when due.

Labour includes manual, and all other kinds of exertion, mental as well as physical; and as the act must be construed strictly, the waiver must so be construed likewise. No general statute can be repealed or otherwise avoided by mere implication.

Again, the garnishees are his employers—the Act of Assembly protects them from liability—there is no privity of contract nor any implication directly or otherwise that subjects them to this proceeding; they take exception to it. By the Act of 1849, the property exemption was for the benefit of the debtor for property in his possession; he could waive it, as Strong, J., lays down the law in 7 Casey 225, and with good reason; it is property in his control absolutely, which he can give away by waiver just as he could otherwise dispose of it.

No other rights are affected in third persons, and under the Act of 1845 it is expressly declared that the employer shall not be liable as garnishee. But by this proceeding he seeks against the Act of Assembly to charge the garnishees not only with liability for the money, but also to subject them to costs for asserting a

[Firmstone *et al. v.* Mack.]

right under the act made expressly for their protection. The object of the legislature was to furnish a fund for the constant support of the day labourer and family, that could not be taken out of his hands by a waiver.

The act in its spirit has for its object the enforcement of one of the best principles of good government, without which much injury would ensue. It surely is no hardship to the attaching creditor that he be left to his common law remedy for the enforcement of his claim. The law is, we urge, that he should be so left. See Catlin *v.* Ensign, 5 Casey 264.

*H. D. Maxwell* and *Edward J. Fox,* for defendants.—Defendants having got goods from plaintiff upon this contract agreeing to waive the exemption provided as to wages and "all other exemption laws now in force in this Commonwealth," now refuse to pay, and plaintiff must lose his money, if he is deprived of this mode of recovery. The question for this court is, are these garnishees liable? The defendants have not appealed from the judgment of the justice. They have made no objection to our recovering the money from their debtors under the process given by the law. The garnishees, however, take up the contest for them without being asked, and urge that their consent or approval to the defendant's waiver was requisite to make it effective. That our exemption laws were not made for the benefit of the party owing the debtor, but for the debtor himself, requires no argument. See Case *v.* Dunmore *et al.,* 11 Harris 94.

The plaintiffs in error urge that their interpretation should be put upon the act, because it is inconvenient and annoying to such establishments, where hundreds of men are employed, to be obliged to go into court as garnishees, and thus settle the accounts of their workmen. There is another inconvenience on the other side, which may be stated to weigh against this inconvenience. It is the custom for many such companies to pay their labourers once a month, and when a poor man commences his month, he can in many instances get no credit without such a waiver. The merchant who trusts him, and to whom he is a stranger, can have no inducement to give him credit for those articles which he and his family must have or starve, except such a note, in which his right to keep his wages from his creditor is waived.

"Wages" is defined by Webster as follows: "Hire, reward; that which is paid or stipulated for services, *but chiefly for services by manual labour.*" The contract of waiver in this note is of the broadest and most conclusive character. There is no other Act of Assembly exempting money, due for labour done, from collection by attachment, but the 5th section of the Act of April 15th 1845, P. L. 460. No other act therefore could have

[Firmstone *et al. v.* Mack.]

been intended by the makers of this note. That this is an *exemption* is manifest not only from the language of the section, but has been expressly so declared by this court: Heebner *v.* Chave, 5 Barr 118; Catlin *v.* Ensign, 5 Casey 264. But that there may be no room for equivocation, the waiver in this note goes farther than this direct reference to this act, and the makers also waive "*all other exemption* laws now in force in this Com monwealth." Are they bound by these waivers? The question has been so frequently, directly, and fully settled by this court that it cannot be considered any longer an open question: McKinney *v.* Reader, 6 Watts 40; Case *v.* Dunmore, 11 Harris 94.

The opinion of the court was delivered, May 11th 1865, by

WOODWARD, C. J.—The Act of Assembly of 15th April 1845, Purd. 603, was supplemental to the act relating to executions of 16th June 1836, Purd. 431, and extended the jurisdiction of aldermen and justices of the peace to attachment executions. This form of execution, first introduced by the Act of 1836, was confined to the Common Pleas until the Act of 1845 brought it within the jurisdiction of the inferior magistracy. The civil jurisdiction of aldermen and justices of the peace, having no common-law root, and being planted only by statutes, can have no extent beyond what the statutes prescribe; and hence our custom always has been to measure it strictly by statute law. The first section of the Act of 1845 confers jurisdiction in attachment execution, but the proviso of the fifth section declares that "the wages of any. labourers, or the salary of any person in public or private employment, *shall not* be liable to attachment in the hands of the employer."

Regarding this Act of Assembly as conferring a new jurisdiction on aldermen and justices of the peace, it is obvious, beyond all controversy, that wages of labour and salaries are excepted out of the grant; that the new jurisdiction is not to extend to them; that, as to them, aldermen and justices are to possess no more powers than prior statutes conferred. The office of a proviso is to save something out of the generality of the enacting clause; and, in this instance, the only rights and credits saved are wages of labour and salaries, but, because saved, no jurisdiction over them was conferred.

It is not difficult to discern the reasons which influenced the legislative mind in enacting the proviso. Doubtless they meant it should operate as an exemption law for the benefit of the families of labourers and salaried officers, and quite likely they had in view, besides the very inconvenience pointed out and lamented by the judge below, that of manufacturers and other large employers being harassed with attachment executions

[Firmstone *et al. v.* Mack.]

from neighbouring justices of the peace, complicating accounts, accumulating costs, and depriving them of the labourers on whom they depended, by diverting wages from the current support of the labourer's family to the paying of former debts.

The legislature having thus expressly withheld jurisdiction over the subject-matter, the only remaining question is, Can the debtor confer it by agreeing in writing to waive all objection to its exercise? In general, consent of parties cannot confer jurisdiction, and in respect to statutory tribunals of limited and restricted jurisdiction, it would be going very far to say that parties may confer power which the legislature had expressly withheld. The note of Sheahan, on which the justice rendered judgment, waived the rights, benefits, and privileges of the Act of Assembly of 9th April 1849, commonly called the Exemption Law, also " the Act of Assembly which exempts money due for labour done from collection by attachment." This, though not an accurate description of the Act of 1845, is a sufficient reference to the proviso, and was meant to be a displacement or repeal of that part of the statute. Notwithstanding the legislature have said wages of labour shall not be attached by justices of the peace, Patrick Sheahan has said his wages may be, and then the question recurs, Has the justice the power?

Treating it as a matter of jurisdiction, no argument that opposes itself to the Act of Assembly can have footing to stand a moment; but may it not be likened to the personal privilege conferred by the Exemption Act of 1849, and which we have decided may be waived? Without any very great refinement, distinctions may be taken between the Act of 1849 and this proviso in the act of 1845, but still it is the popular and perhaps the fairest mode to regard them both as exemption statutes which confer upon the debtor an option. That he may waive this option under the Act of 1849, not only results out of the nature of the thing, but has been expressly declared in many cases, in some, however, with regrets expressed that we did not set out with a different construction and hold the privilege or option indefeasible. If it were *res integra;* if, with the experience and observation we have had, we were now for the first to pass upon the question whether debtors could waive their rights under the Act of 1849 or widows theirs under the Act of 14th April 1851, we would be very likely to deny it altogether, and to stick to the statutes as they are written.

And here we have a new case. We have never decided that a debtor may repeal the proviso of the Act of 1845, and public policy pleads strongly against such a decision. If we make it, we bring on the litigation which has sprung out of our decision upon the Act of 1849—the inconveniences to employers before adverted to, and the temptation to weak debtors to beggar their

[*Firmstone et al. v.* Mack.]

families in behalf of sharp and grasping creditors. We will not, therefore, strain the proviso to fit it to our construction of the exemption statutes, but will leave it to its natural operation as it is expressed. The legislature having said that justices shall not attach wages, we will say they shall not, though a particular debtor has said they may. It is to be observed that the garnishee has rights in the premises, and he is under the Act of Assembly, but is not a party to the agreement which his labourer makes with a creditor. Why should he be annoyed and subjected to costs, his work hindered, and his hands deprived of their daily bread by an agreement between others to which he was not a party, and of which he had no notice? Why should such an agreement be made a rule of law to garnishees instead of a statute which they knew of when they made their business arrangements and employed their labourers, and which they had a right to expect would be administered as it is written?

We think, on the whole, that our duty will be best performed by declaring the agreement to waive the proviso void, and that the justice had no jurisdiction to attach the wages of Shean.

And now, to wit, May 11th 1865, this cause having been argued and considered, the judgment rendered in the case stated by the Court of Common Pleas of the county of Northampton is reversed, and judgment is here entered for the garnishees, defendants below, for costs.