# Adinolfi, Appellant, v. Hazlett.

*Constitutional law—Contracts—Right of contract—Character of the right—Building contracts—Act of June 1, 1907, P. L. 381—Freedom of contract—Infringement by legislature.*

1. The right to make contracts is a property right included in the right to acquire, possess, and protect private property which is guaranteed by the Constitution of Pennsylvania, for without the privilege of contracting there could not be free and full enjoyment of property; the exercise of this right by persons who are sui juris, when not contra bonos mores, or in contravention of public policy, cannot be prevented by the legislature.

2. The Act of June 1, 1907, P. L. 381, which declares that no provision in any contract that the award of an engineer, architect, or other person, shall be final or conclusive, or that the certificate of an engineer, architect, or other person shall be a condition precedent to maintaining an action on such contract, shall oust the jurisdiction of the courts, but that controversies arising on contracts containing such provisions shall be determined as if such provisions were not in such contracts, is an unreasonable interference by the legislature with contracts which are neither contra bonos mores, nor in contravention of public policy, and is unconstitutional and void.

3. The exemption of municipal or other corporations invested with the privilege of taking private property for public use from the operation of the Act of June 1, 1907, P. L. 381, is an express declaration by the legislature that those provisions in contracts which it has attempted to invalidate, are not against public policy.

4. Where a subcontractor agreed with a general contractor to construct certain stone work in connection with the building of a church by the general contractor, and the subcontract provided that certain payments should be made as the work progressed, but only upon certificates of the architect, and that "all payments shall be due when certificates for the same are issued," and the subcontractor, after doing some of the work, claimed that under the contract he was entitled to a payment, but presented no architect's

certificate to the general contractor, and upon being refused payment brought an action of assumpsit for the amount which he alleged was due for the work already done, the court was correct in charging the jury that under the evidence, plaintiff was not entitled to payment at the time when he made the demand therefor, and a verdict and judgment for defendant in such case will be sustained.

Mr. Justice ELKIN dissents.

Argued April 13, 1913.  Appeal, No. 65, Jan. T., 1913, by plaintiff, from judgment of C. P. Fayette Co., Sept. T., 1910, No. 497, on verdict for defendant in case of Tony Adinolfi v. W. A. Hazlett.  Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.  Affirmed.

Assumpsit to recover a balance alleged to be due on a subcontract for the construction of certain stone work. Before UMBEL, P. J.

The defendant Hazlett was a general contractor, who had entered into a contract with plaintiff Adinolfi for the construction of certain stone work by Adinolfi on a church building, which was being erected by Hazlett. The ninth article of the subcontract provided that the contract price of $7,500.00 should be paid "by Gen. contractor to the subcontractor in current funds, and only upon certificates of the architect as follows: $1,500.00 when the foundation is completed; $2,500.00 when the stone work average 8 ft. on the building......and all payments shall be due when certificates for the same are issued." There was no certificate of the architect.

Verdict for defendant and judgment thereon. Plaintiff appealed.

*Errors assigned* were answers to points.

W. J. *Sturgis,* with him *E. H. Reppert,* and *S. J. Morrow,* for appellant.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* for appellee.

OPINION BY MR. JUSTICE BROWN, June 27, 1913:

The single question raised on this appeal is the constitutionality of the Act of June 1, 1907, P. L. 381, which is as follows: "No provision in any contract providing, either in express words or in substance and effect, that an award or appraisement of an engineer, architect, or other person shall be final or conclusive, nor any provision that a certificate of an engineer, architect or other person shall be a condition precedent to maintaining an action on such contract, shall oust the jurisdiction of the courts; but any controversy arising on any contract containing such provisions, or any of them, shall be determined in due course of law, with the same effect as if such provisions were not in such contract: Provided, That this act shall not apply to municipal or other corporations invested with the privilege of taking private property for public use."

The fundamental law of the State recognizes the absolute right of private property in declaring that all men have the inherent and indefeasible right of acquiring, possessing and protecting property. This absolute right to acquire, possess and protect property includes the right to make reasonable contracts in relation to it, to be protected by the law, for the privilege of contracting is a property right, without which there cannot be full and free use and enjoyment of property. Public policy, therefore, requires that all persons competent to contract shall have the utmost liberty to do so, so long as their contracts are not contra bonos mores or prejudicial to the general welfare: Waters v. Wolf, 162 Pa. 153. The legislature cannot prevent persons who are sui juris from making their own contracts: Godcharles v. Wigeman, 113 Pa. 431.

Through an unbroken line of cases, from Monongahela Navigation Company v. Fenlon, 4 W. & S. 205, down to

1907, the contractual stipulation, forbidden, in effect, by the act of assembly passed that year, has been upheld in the face of repeated efforts to have it declared void, as being against public policy in ousting the jurisdiction of the courts. It is needless to refer to the innumerable cases in which such contracts have been sustained, for no lawyer in the State is unfamiliar with them. If these contracts have heretofore been upheld as not contravening any public policy, why may the legislature now declare them to be invalid? It can thus interfere with an absolute right, guaranteed by the Constitution, only in the exercise of its police power to declare contracts void which offend good morals or are detrimental to the welfare of the general public. The Act of 1907 is for no such contracts. Those which it declares are not to be enforced in accordance with their express terms are between private parties competent to contract, and in those contracts the public are in no manner interested. Private rights relating to strictly private property are alone involved in the contracts, which are absolutely free from any moral turpitude, and if the parties to them, for the purpose of avoiding litigation never encouraged by the law, agree that any disputes which may arise between them shall be settled outside the courts by the judgment of a mutually selected arbitrator, what public policy is offended, and what conceivable reason is there why the legislature should be permitted to interfere with an absolute right of one of the contracting parties, made inviolate by the Constitution? Instead of frowning upon such contracts, public policy should rather look upon them with the approval they have received these many years from the courts whose jurisdiction they have ousted. But we need not further pursue this, for the legislature, in forbidding them, has, in the same breath, expressly declared them not to be against public policy by providing "that this act shall not apply to municipal or other corporations invested with the privilege of taking private property for public use." If

public and quasi public corporations are not to be affected by the act, and their right to freely contract is to remain unrestrained as no public policy calls for legislative interference with it, no reason can be urged why there should be any interference with that same right, inherent in private persons who contract for themselves alone and in whose contracts the public have absolutely no concern.

Learned counsel for appellant frankly admit that the Act of 1907 can be sustained only on the ground of public policy, and urge that it ought to be upheld for that reason. In support of this contention they refer to statutes forbidding contracts for usurious interest, which have been sustained, and to the Act of 1845, exempting wages from attachment, which prevailed in the face of an agreement by a wage-earner that they might be attached. We are unable to follow these analogies. By the unwritten law it was illegal to take money for the use of money. He who did so was reproached as a usurer and exposed to the censure of the church, and, if it was discovered after the death of any one that he had been a usurer, his goods were forfeited to the king and his lands escheated to the lord of the fee. No action was maintainable on any promise to pay for the use of money, because the contract was tainted with illegality. But parliament interfered with what the common law thus condemned and made it lawful to take a limited amount of interest. A privilege was given which the common law denied, and in granting that privilege, it was clearly competent for the government to limit it. When the limits set to the privilege are transgressed by the money lender, he becomes just what the common law declared him to be, and his contract for usurious interest is, therefore, not enforceable. No statute cleanses it from the taint of illegality imputed to it by the common law. While it is true that we held in Firmstone v. Mack, 49 Pa. 387, that the creditor of a wage-earner could not attach the latter's wages, though he had contracted that they

might be attached, counsel for appellant overlook the reasons why the creditor was not permitted to enforce his contract. By the Act of April 15, 1845, P. L. 459, the legislature conferred jurisdiction upon aldermen and justices of the peace to issue attachments, but expressly withheld their right to attach wages. The jurisdiction being purely statutory, no consent of the indebted defendant could confer jurisdiction for the attachment of his wages. But, aside from this, public policy forbade that he should be permitted to starve his family and leave them in nakedness by turning over to his creditor the only means he had to feed and clothe them.

While the legislature may not interfere with the absolute individual right to contract, except on the ground of public policy, it may of course regulate the manner in which that right shall be exercised. By way of illustration, it may, for the purpose of preventing fraud and perjury, provide that the contract shall be in writing, or that it shall be placed upon record, in order that all persons who may be affected by it, though not parties to it, shall have notice of it. The Act of 1907 is not such legislation. It is the bald denial of a right to contract, and this the legislature may not do: Godcharles v. Wigeman, supra. For the reasons stated, it is a dead letter, and the judgment below is affirmed.

DISSENTING OPINION BY MR. JUSTICE ELKIN:

I cannot agree with the conclusion reached in this case, nor with the reasons given for sustaining the judgment entered by the court below. According to my view the legislature acted within the scope of its legitimate powers in passing the Act of June 1, 1907, P. L. 381, and if this be true, it is not for the courts to strike it down because they may doubt its wisdom or disagree with the policy of the law thus declared. The Act of 1907 is a legislative declaration that it is against public policy to deny contracting parties in the cases specified the right

to have controversies arising between them tried in courts of law. The general rule is that whatever tends to injustice or oppression, or that is in restraint of natural or legal right, or that obstructs justice, or that is against good morals, even if made the subject of contract, may be declared void as against public policy: Tarbell v. Rutland R. R. Co., 73 Vt. 347. In the absence of constitutional provision, or of statutory declaration, it is within the province of the courts to say whether contracts of a certain character are void as against public policy. But it should not be forgotten that public policy is but the manifest will of the people, and that the legislature more nearly than any other branch of government gives expression to the public will. When we speak of the public policy of the State, we mean the law of the State, as it is found in the Constitution, statutes, and judicial decisions: People v. Hawkins, 42 L. R. A. 490 (157 N. Y. 1). No one can seriously question the power of the legislature, within proper constitutional limitations, to enact legislation relating to the public policy of the State. When the legislature has so acted it is not within the province of the courts to declare such acts a nullity and of no effect except on constitutional grounds. Of course if such legislation contravenes the Constitution, it must be stricken down no matter for what purpose it was enacted. The burden is upon him who undertakes to have an act of assembly stricken down to point out the constitutional provision with which it is in contravention. In my judgment this burden has not been met in the present case. Certainly there is no express provision of the Constitution denying the right to pass such legislation, nor is such a result made necessary by implication. It is true the bill of rights does declare that all men have the inherent and indefeasible right of acquiring, possessing and protecting property, but this is wide of the mark as applied to the question presented by the case at bar. Men in dealing with each other are bound by the law of the State, and it is not

the indefeasible right of any man to make a contract in express violation of what the law declares. It is much more to the point to say that the Constitution in express terms provides that: "All courts shall be open, and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law:" Constitution, Art. I, Sec. 11. In the class of cases covered by the Act of 1907 parties are denied the right to have their injuries redressed by due course of law, and this was the evil intended to be remedied by that act. According to my view, this was an evil that should be remedied, and the legislature was the proper body to provide the remedy. It is true our courts have frequently decided that contracts of this character were binding upon the parties but this was before the legislature had declared such contracts to be void as against public policy. If the Act of 1907 is valid, what was decided prior to that time is without controlling effect now. There are numerous instances in which contracts of the kind in question here have been declared void as against public policy. A promissory note given to a creditor to induce him to withdraw his opposition to a discharge in insolvency was declared void as against the policy of the law: Baker v. Matlack, 1 Ash. 68; Simmons v. West, 2 Miles 96. A contract to pay usurious interest is void for the same reason, and no one has ever doubted the power of the legislature to limit the rate of interest even against the express provisions of a contract. An agreement by a laborer to waive the proviso of a statute exempting wages from attachment was held to be a void contract: Firmstone v. Mack, 49 Pa. 387. There are many other cases of similar import, but I have only indicated a few as an illustration that there is nothing new in this doctrine. I would hold the Act of 1907 to be the valid exercise of legislative power, and for this reason would reverse the judgment in the present case.