## Burkhard, to use, v. Heilmann et al.

*Scanlan & Harkins* and *George E. Wolfe*, for plaintiff.
*Weimer & Bennett*, for garnishee.

GREER, J., May 8, 1933.—On August 30, 1932, a præcipe for an attachment execution in the above case was filed and duly served on Prudential Insurance Company of America and The First National Bank of Johnstown, Pa., executor, etc., of John A. Heilmann, deceased.

The answer of Prudential Insurance Company of America, garnishee, was filed September 26, 1932, in which it acknowledged in its hands the total of $1,995.79 of four insurance policies upon the life of the said John A. Heilmann, to which Clem J. Heilmann, defendant, was acknowledged to be entitled. The insurance was made up of the following policies: Staff Group, $285.71; Gr. Pol. 1690-C-9521, $785.72; Gr. Pol. 1690-C-9521-A, $785.71; Pol. 142877, $138.65; and garnishee further answered that the said policies are exempt from attachment execution under the provisions of the Act of April 26, 1929, P. L. 785, amending the Act of May 17, 1921, P. L. 682.

The answer of Clem J. Heilmann was filed September 26, 1932, admitting the correctness of the answer of Prudential Insurance Company of America, garnishee, and adding this in its second paragraph:

"Second: The defendant hereby waives and renounces the benefit of the Act of Assembly of April 26, 1929, P. L. 785, sec. 418, exempting the proceeds of group insurance from attachment, etc."

The answer of The First National Bank of Johnstown, Pennsylvania, executor, etc., was filed December 19, 1932, in which it averred that it had no moneys in its possession in favor of Clem J. Heilmann, but that it was executor of the will of John A. Heilmann, deceased, and that until its account is filed it could make no more satisfactory answer, adding that plaintiff had caused to be issued the same attachment execution, naming Prudential Life Insurance Company of America as garnishee, relative to the funds due and owing Clem J. Heilmann individually, and served upon said garnishee.

A petition was presented on November 7, 1932, on behalf of Prudential Insurance Company of America, praying the court to determine and decree the validity of the "attachment in execution" and to determine and decree the rights of

priority of the several plaintiffs to the funds in their hands. Similar attachments had been issued to Nos. 898, 900, 902, 904, 926, and 928, September Term, 1932, and No. 27, December Term, 1932. The decision herein made as to the proceedings under attachment to No. 896, September Term, 1932, will be applicable to each of the stated attachment executions. The rule granted November 7, 1932, was made absolute on December 12, 1932.

The will of John A. Heilmann, duly probated, by paragraph 14 bequeathed the residue of the property of the decedent, including two insurance policies in Prudential Life Insurance Company, totaling $12,000, to The First National Bank of Johnstown, Pa., in trust for the following named uses and purposes, inter alia: One seventh part or share thereof to be held in trust by said trustee for each of his said children, to wit: "Clem J. Heilmann, Charles C. Heilmann, John A. Heilmann, Jr., Francis ·J. Heilmann, Paul Heilmann, Christine W. Gaffney and Florence L. Woolf, and to pay unto each of my said children the sum of twenty-five ($25.00) dollars per month, said payments to continue until there shall remain only the sum of two thousand ($2000.00) dollars in said trust fund, which must be retained and expended as provided hereinabove", together with further qualifying paragraphs defining the discretion of the said trustee, the share of the defendant, Clem J. Heilmann, in said trust fund being the above stated amount of $1995.79.

The question for determination is whether or not this balance in the hands of Prudential Insurance Co. of America is payable to the plaintiffs in the aforesaid attachment executions or payable to William H. Burkhard by virtue of an assignment, made to the said Burkhard by Clem J. Heilmann, of the right, title, and interest of the latter in the proceeds of the following policies: (1) Group Pol. 1690-C-9521; (2) Staff Group insurance (no number); (3) Group Pol. 1690-C-9521, in the sum of $1,857.10, under seal, under date of September 20, 1932.

The date of service of the attachment execution to No. 896, September Term, 1932, was August 31, 1932, therefore the assignment by Heilmann to Burkhard was subsequent to the aforesaid attachment. The dates of service of the subsequent attachments were also all prior to September 20, 1932.

In a very extended brief on behalf of Clem J. Heilmann, defendant, it is earnestly contended by his counsel that the funds in the hands of Prudential Insurance Company of America as garnishee should be distributed in accordance with the rights of priority of the plaintiffs in the above-stated judgments, as established by the date of service of the respective writs upon the said garnishee, for the reason that these judgments were based on judgment notes containing the clause which reads: "And further waiving all benefit of the exemption laws of this Commonwealth, and any levy on real or personal property made by virtue of any execution hereon, and no benefit of exemption or stay laws shall be claimed." This in the face of the statute of April 26, 1929, P. L. 785, amending the Act of May 17, 1921, P. L. 682, expressly exempting from attachment, garnishment, or other process policies of group insurance 'in the following language:

"Section 418. Exemption from Execution.—No policy of group insurance, nor the proceeds thereof, when paid to any employee or employees thereunder, shall be liable to attachment, garnishment, or other process, or to be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of such employee, or his beneficiary, or any other person, who may have a right thereunder, either before or after payment, nor shall the proceeds thereof, when not made payable to a named beneficiary, constitute a part of the estate of the employee for the payment of his debts."

The waiver of exemption is phrased in the ordinary language used in connection with exemptions under the Act of 1849, as to which it has been held no particular form of words is necessary: Smiley v. Bowman, 3 Grant 132.

In one instance the phraseology was "without any relief from the homestead exemption law": Harper et al. v. Dank, 2 Pearson 520.

Being couched in the language used with reference to the Act of 1849, the court would not be astute in an endeavor to extend such language beyond its ordinary accepted meaning. But, in addition, we are of the opinion that the Act of 1929, supra, was intended to safeguard the property of the insured and their beneficiaries to the extent that such exemption may not be waived on the ground that to permit such waiver of exemption would be against public policy.

We are content to rest our decision, as to the effect of the provisions of the Act of 1929 relating to nonliability of group insurance to attachment, on the broad ground of public policy. Public policy has always forbidden the waiver of exemption for wages, and in Adinolfi v. Hazlett, 242 Pa. 25, Mr. Justice Brown forcibly remarks: "public policy forbade that he should be permitted to starve his family and leave them in nakedness by turning over to his creditor the only means he had to feed and clothe them."

If this be true of one living, by so much the more would it be against public policy that the insurance provided by the breadwinner to be paid at his death to his wife and family should also be immune from attachment and this exemption not susceptible of being waived at the instance of the insured.

Counsel further argued that the assignment to William H. Burkhard is invalid because it is an assignment of an exemption. We find nothing in the pleadings to indicate any claim for exemption on part of Clem J. Heilmann. What was assigned was the insurance payable to the said Clem J. Heilmann by the insuring company under the terms of his father's will upon the aforesaid group insurance. This is no assignment of exempt property, and the cases cited are for this reason not apropos.

Wherefore the attachment is dissolved (as likewise are the attachments in the cases above recited as being controlled by this opinion) at the cost of the attaching creditor, May 8, 1933.

From Henry W. Storey, Jr., Johnstown, Pa.