## Greensboro Gas Company v. Quinn et ux.

*Smith, Best & Horn,* for plaintiff.
*Scales, Loughran & Shaw,* for defendant.

LAIRD, J., November 25, 1944.—On February 25, 1944, plaintiff herein filed its bill of complaint praying for a restraining order against defendants, in which it was alleged, inter alia, that said defendants were the owners of a tract of some 7 acres and 57 perches of land located on the north side of the Lincoln Highway in the Township of Hempfield, a few miles west of Greensburg, and that plaintiff, in its capacity as a public service corporation, maintained a high-pressure eight-inch production gas line over, across, and through the land of defendants by virtue of a right of way obtained from defendants' predecessor in title, which said right-of-way agreement was offered in evidence and is recorded in the Office for the Recording of Deeds, etc., in and for Westmoreland County, Pa., in deed book 557, page 166.

It further appears from the bill of complaint and from the testimony taken that by reason of some alterations and improvements in the Lincoln Highway, by virtue of which the road was widened from a two-lane highway to a four-lane highway, the grade of the highway as it existed in front of defendants' property was raised, which, as we understand, necessitated the moving of defendants' service station some distance to the north of its previous location and the filling of the ground in order to raise the level of the service station to the level of the highway.

As a result of all this, plaintiff complains that defendants, while engaged in some grading and filling

operations on the land of which defendants are the owner, have themselves, or by their agents, servants, workmen, and employes cast, dumped, piled, and filled large quantities of rock, earth, dirt, cinders, glass, timbers, and other refuse over a portion of the right of way and the said eight-inch production line to a depth of 16 feet.

Plaintiff, therefore, prayed that an injunction be granted to restrain defendants, their agents, servants, workmen, and employes from casting, dumping, piling, and filling rock, earth, dirt, cinders, glass, timbers, and other refuse over, on, and across plaintiff's eight-inch production line and right of way.

On the presentation of the bill, a temporary injunction was granted, and it was agreed by the parties that the temporary order might continue in force and effect until the regular term of equity court on March 22, 1944, at which time testimony was taken and the final hearing held.

From the testimony so taken the chancellor who heard the case made numerous findings of fact, arrived at some conclusions of law, and delivered an opinion in which he dissolved the preliminary injunction, refused the prayer for a mandatory injunction, and dismissed the bill of complaint.

To the findings of fact, conclusions of law, and decree of the chancellor, 24 exceptions were filed by plaintiff and the matter comes before the court in banc at this time on plaintiff's exceptions so filed.

We regret that we cannot agree with the learned chancellor in all of his findings of fact, conclusions of law, and decree. Neither can we agree with plaintiff that the chancellor was in error in all of his findings of fact and conclusions of law. . . .

We agree with counsel for plaintiff that there is a dearth of Pennsylvania authorities on the precise question involving gas pipe lines and the placing of ma-

terials over said lines, such as was done in the instant case, so as to increase the overburden upon the line and right of way. This lack of authorities may be in part, at least, as contended by plaintiff, due to the fact that where pipe lines have been laid in the ground and subsequent grants of the fee have been made subject to the pipe lines and rights of way the rights of the parties have been so clear that the landowners have always recognized the extent of the duty which they owed to the owner of the easement and have done no acts which would interfere with or obstruct the reasonable use of such right of way.

However we are of opinion, and it is supported by authority, that this case must be decided by the court and the rights of the parties determined upon the same legal principles which have application generally to rights of way and easements which involve the nature and extent of the rights between owners of the dominant and servient estates.

In their answer filed to the bill, defendants mistakenly assume in respect to the grant or easement that they are the owners of the dominant estate and tenement. This may account, to some extent at least, for the difference of opinion as to the legal rights of the parties hereto.

We cannot agree with the chancellor that the cases of Valley Smokeless Coal Co. v. Manufacturers' Water Co., 295 Pa. 40, 302 Pa. 232, do not apply to the case at bar. We are constrained to believe that the principles are the same but, be that as it may, in the instant case the chancellor correctly holds:

"Plaintiff holds its right of way in perpetuity and defendants, as the owners of the servient estate, are under the duty of so using their land as to not unreasonably interfere with the plaintiff in the exercise of the rights which it acquired under its grant, and the defendants in turn retain full dominion of the land except as that dominion is restricted by the terms of the

grant and the reasonable exercise thereof." But he goes on to say:

"In the case of Smith v. Rowland, 243 Pa. 306, the Supreme Court in a per curiam opinion affirmed the findings of fact and conclusions of law of Judge Shafer of the Common Pleas Court of Allegheny County in an equity case involving an alley. On page 311, we find the following language:

" 'The ordinary rule undoubtedly is that when the owner of the fee in land conveys a right-of-way over it he retains to himself full dominion over the land, except so far as it is necessary to restrict that dominion in order to secure the enjoyment of the easement granted, and that he may make any use of the land which does not interfere with the reasonable use of the way by his grantee.' "

And we cannot agree that the case of Smith v. Rowland, supra, rules the case at bar. The facts are somewhat different. In the Smith case, the injury complained of was (p. 310) "the carrying of scenery once or twice a week through the eight-foot strip to the rear of the theater, and the passage of actors and actresses along it to the same point before and after performances."

The court held (p. 310) : "There is no evidence that this use of the alleyway does the plaintiff any material damage."

In addition, plaintiff in the cited case was guilty of laches. He stood by and allowed defendant to lay pipes in the alley and to pave the same at great expense and to erect theatres at the cost of over $100,000 and made no objection and took no action until after the expense had been incurred and then asked for what amounted to a mandatory injunction. The court could not do otherwise than refuse it.

We have no quarrel with that case nor with the law enunciated by the court, but we do not believe it to be

parallel with the case at bar. Had plaintiff in the instant case waited until defendants had completed their filling and grading and then petitioned the court for a mandatory injunction to compel defendants to remove the filling over the gas line, this court would have been justified in refusing the petition, but we are not confronted with that situation. Plaintiff moved in time to protect its rights, and we feel this protection should be afforded. We think the case at bar is more in line with Gebhart v. Graves, 36 Pa. Superior Ct. 228.

We are of opinion that Stuart v. Gimbel Bros., Inc., et al., 285 Pa. 102, is also in point. In the Stuart case, the Supreme Court said (pp. 107 and 108) :

" 'And as to the principle invoked, that a chancellor will refuse to enjoin when greater injury will result from granting than refusing an injunction, it is enough to observe that it has no application where the act complained of is in itself as well as in its incidents tortious. In such case it cannot be said that injury would result from an injunction, for no man can complain that he is injured by being prevented from doing to the hurt of another that which he has no right to do. Nor can it make the slightest difference that the plaintiff's property is insignificant in value to him as compared with the advantages that would accrue to the defendants from its occupation.'

"This principle was applied in Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, 555, where we said, 'There can be no balancing of conveniences, when such balancing involves the preservation of an established right; . . .' "

Defendants cite and rely upon the case of Duross v. Singer, 224 Pa. 573, but we do not consider that case an authority which should be followed in the instant case. No testimony was taken in the Duross case. It was decided on bill and answer, nothing being involved

except plaintiff's right of passage over the surface of the alleyway and defendant's right to build over the alley in such a way that plaintiff's right was not interfered with, no question of light or air being involved.

Neither do we consider the case of Moffitt v. Lytle et al., 165 Pa. 173, a parallel case which controls the case at bar. The facts are not at all similar and the decision was not final, the controversy being returned to the lower court for a new trial. Neither have we any quarrel with Winnett v. Carnegie Natural Gas Co., 37 Pa. Superior Ct. 204, but that case was an action in trespass to recover damages and is not in point.

In the instant case there is no question but what the owner of the fee may do anything he chooses with his property or use his land for any purpose or in any manner he likes as long as he does not interfere materially with the easement of plaintiff.

In Weiss & Maen v. Greenberg, 101 Pa. Superior Ct. 24, it is said (pp. 29 and 30) :

"The owner of the servient soil must use his property so that he does not materially interfere with the easement . . .

"Defendant has interfered with plaintiff's right of property. It makes no difference that this right is insignificant in value to him as compared with the advantages that would accrue to defendant from its violation. . . . 'There can be no balancing of conveniences, when such balancing involves the preservation of an established right.' "

While there is some difference between an easement over the surface of land, as, for instance, an alley, and an easement beneath the surface, as a right of way for a pipe line, we think the law applicable to both is expressed by Mr. Justice Mestrezat in Schmoele v. Betz, 212 Pa. 32. He says in part, quoting from pages 39 and 40 :

"The erection of the fire escape by the defendants was a trespass and an infringement of the rights of the plaintiffs in the alley, and the right of the latter to the easement being conceded, equity will direct a removal of the obstruction and enjoin a continuance of the trespass without proof of actual damages. Such is the doctrine of all our cases. . . . 'If it is wrong for a private owner, owning on both sides of the street, to shed over the street, it is wrong for a private owner to shed over an alley if the owners object. No matter if they are not injured to any considerable extent, still if their legal right is invaded, they are entitled to have that right vindicated by verdict and judgment in their favor establishing the right and its invasion.' "

In Mercantile Library Company of Philadelphia v. Fidelity Trust Co., Trustee, 235 Pa. 5, it was said by the Supreme Court (p. 13) : "The covenant must be understood to apply to the physical conditions then existing on the ground."

At the time the easement which is the subject of the present controversy was obtained by plaintiff from defendants' predecessors in title, the land now owned by defendants was used as farm property, and, as we understand the testimony, even after the fee was purchased by defendants the property was used for farming purposes. There was no reason to suspect that the land would ever be used for other purposes, and there is no question but what defendants would still have the absolute right to plow, harrow, and cultivate the land and even plant an orchard over and above the pipe line of the plaintiff company, but we cannot agree that defendants have the right to raise the grade of the surface of the land some 16 to 18 feet by filling in with loose ashes, cinders, slag, and refuse as complained of in the bill in the present case.

Perhaps the thought is more clearly stated by the Supreme Court of Ohio in Industrial Gas Co. v. Jones

et al., 24 N. E. (2d) 830. In that case the court said (p. 831):

"The fact that the grantors reserved the use and enjoyment of the surface does not restrict the grant. It contemplates surface use for agricultural purposes and not the erection of structures and the changing of surface contour by dumping injurious waste, containing chemicals, on plaintiff's pipe line. If such were permitted the grant might be impaired."

The same proposition of law is expressed by the Supreme Court of Massachusetts in Kelley et al. v. Saltmarsh et al., 16 N. E. 460. In that case the court said (p. 462):

". . . where there are several owners in common of a private way, each owner may make reasonable improvements and repairs which do not injuriously affect his co-owners, but he cannot make any alteration of the course of the way, or any change in its grade or surface which makes it less convenient and useful to any one who has an equal right in the way. In the case at bar the defendants have the right to level and work the surface of the way so as to make it convenient and practicable as a way, so far as they can do so, without injuring the plaintiffs or the other co-owners of the way. But they have no right to cut down the grade, as they propose to do, 8 or 10 feet. The master has found that this would materially injure the plaintiffs' lots, and endanger their buildings, unless proper support is furnished to the soil of the plaintiffs. Even if such support is furnished, yet it would make a material change in the way, and diminish the convenience of the plaintiffs in the use of their rights of way. The plaintiffs cannot be compelled to submit to such a change of their rights against their wills." See also Mosher v. Salt River Valley Water Users' Assn., 24 Ariz. 339, 209 Pac. 596.

Plaintiff should not be compelled to surrender its easement and accept another because of greater benefit

to defendants than damage to plaintiff; Siegel et al. v. Starzyk, 130 N. E. 499; and if it did, what is to prevent defendants from filling in over the new easement? And so on ad infinitum.

In the case at bar, defendants contend that, because the State Highway Department widened and changed the grade of the Lincoln Highway upon which their property abuts, they can fill in 16 feet of ashes over plaintiff's pipe line in the rear of their land. If defendants have the right to fill in the rear of their land to the extent of 16 feet, they have the right to fill in over the easement of plaintiff to 116 feet or any other depth they may desire. Likewise, if defendants have the right to fill in over and across the easement of plaintiffs to a depth of 16 to 18 feet, the owners of the adjoining land on either side of defendants would have the right to fill in to the same height or any other amount they may desire, and so may the owners of land along the right of way of plaintiff to the end of the line. We do not believe this to be the law.

In Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, it is said (p. 555):

"The right of a man to use and enjoy his property is as supreme as his neighbor's and no artificial use of it by either can be permitted to destroy that of the other."

And at page 547, Mr. Justice Brown, delivering the opinion of the court, said:

"If an injury be continuous and remediable at law only by a multiplicity of suits, it can well be regarded as an irreparable one, calling for the interference of equity by the exercise of its restraining powers."

In the instant case, plaintiff is a public service corporation, supplying the manufacturing city of Jeannette with natural gas for fuel.

In Robb v. Carnegie Bros. & Co., 145 Pa. 324, a case which went up from this county, the Supreme Court said (pp. 339 and 340):

"It is a fundamental principle of our system of government that the interest of the public is higher than that of the individual, so that when these interests are in conflict the latter must give way."

Considering this case from a monetary standpoint, we concede that there is not a great amount involved in the controversy, but "where a right has been invaded, the question of comparative injury becomes unimportant": Valley Smokeless Coal Co. v. Manufacturers Water Co., 295 Pa. 40, 48.

Having sustained certain of the exceptions to the findings of fact and conclusions of law of the chancellor, in accordance therewith it is necessary to modify or change the decree of the chancellor dated May 31, 1944; consequently, we will sustain plaintiff's twenty-fourth exception to said decree and we now make the following

*Decree*

And now, to wit, November 25, 1944, after argument and after due and careful consideration, it is ordered, adjudged, and decreed, a majority of the court concurring, that the twenty-fourth exception of plaintiff be and the same hereby is sustained; that the preliminary injunction heretofore granted be and the same hereby is made permanent, and that defendants, James J. Quinn and Viola Quinn, his wife, and each of them, their agents, servants, workmen, and employes, or any other person or persons whomsoever, be and they hereby are enjoined and restrained from casting, dumping, piling, filling, or wasting rock, earth, dirt, cinders, glass, timbers, or any other materials over, on, and across the natural surface of the land overlying a portion of plaintiff's eight-inch production line or right of way, as the same extends through the lands of defendants, commencing at a point overlying said line distant 58 feet, as measured along the same, from the dividing line separating lands of defendants and lands

now or formerly of A. B. Miller, and extending thence along the course or route of said gas line as it passes through lands of defendants to a point where said gas line leaves the land of defendants and enters upon lands of another, which constitutes the southwest boundary of defendants' land. The costs of this proceeding shall be paid by defendants.

### Dissenting opinion

MCWHERTER, J., dissenting.—I feel impelled to disagree with the majority opinion. Supplementary to the opinion filed by me as chancellor in connection with the decree nisi refusing an injunction and the cases therein cited, I desire to submit the following:

We are construing a contract, namely, the grant of the right of way. The rights of plaintiff as the owner of the dominant estate and of defendants as the owners of the servient estate were inexorably fixed by the terms of the deed for the right of way executed and delivered by Mr. and Mrs. Gress in 1916. No court of equity has the power to enlarge or increase the rights which plaintiff acquired under the grant, nor diminish the rights of defendants as owners of the servient estate. The granting of the injunction prayed for would appear to be depriving defendants of a property right without compensation. Pennsylvania Coal Co. v. Mahon et al., 260 U. S. 393, supports this position.

The legislature passed the so-called Kohler Act of May 27, 1921, P. L. 1198, in an attempt to remedy the situation prevailing in the City of Scranton and vicinity due to the subsidence of surface resulting from the removal of the veins of anthracite coal under that territory. The act was intended for the purpose of protecting the surface where the owners of the surface had not exercised the precaution to require sublateral support of the surface. The act forbade, in effect, the owners of the coal from so proceeding with their mining operations as to cause the caving in, collapse, or sub-

sidence, inter alia, of any public building, any street, road, or bridge, any track, roadbed, right of way, pipe, conduit, wire, or other facility used by a public service corporation or any dwelling used as a human habitation, factory, store, or place where human labor was employed, or any cemetery.

In Mahon et al. v. Pennsylvania Coal Co., 274 Pa. 489, plaintiffs, husband and wife, as owners of a lot of ground in Scranton, filed a bill in equity for an injunction to restrain defendant coal company from taking out coal under their lot, the remedy of injunction having been expressly provided for in the act. The Attorney General of Pennsylvania, counsel for Scranton Surface Protective Association, counsel for the Scranton Water Company, and the City Solicitor of the City of Scranton, all appeared in behalf of the bill. The Common Pleas Court of Luzerne County declared the act to be unconstitutional. The Supreme Court of Pennsylvania held the act constitutional and Mr. Justice Kephart (later Chief Justice) filed a learned dissenting opinion. Mr. Justice Kephart pointed out that each of the owners of the surface had parted with the right to sublateral support of the surface by failing to make a reservation in their deeds; that each of them probably received a higher price for the coal by reason of there being no reservation, and that the granting of the injunctive relief asked for would be taking private property for public purposes without compensation. He further pointed out that, if the legislature desired to protect the surface from subsidence in the Scranton area, it was its duty to pay for the same and provide for adequate compensation to the owners of the coal who had an absolute right to mine without restriction. We quote from page 509 of his dissenting opinion:

"Since Jones v. Wagner, 66 Pa. 429, 435, decided in 1870, followed by Scranton v. Phillips, 94 Pa. 15, 22, and a long line of cases thereafter, this court has recog-

nized the absolute right to acquire, possess and protect property, including the right to make a reasonable contract in relation thereto; the right to create different estates in land, selling the sub-stratum, releasing the right to have the superincumbent estates supported or releasing the right of surface support; the right to mine all the minerals, even though it should result in the surface falling in. This court has said such contracts are non contra bonos mores, not prejudicial to general welfare and public policy,—that they should be recognized, and that all persons competent to contract should have the utmost liberty to do so. Based on these opinions (Adinolfi v. Hazlett, 242 Pa. 25, 27; Waters v. Wolf, 162 Pa. 153, 170; Godcharles v. Wigeman, 113 Pa. 431, 437; Graff Furnace Co. v. Scranton Coal Co., 244 Pa. 592, 596), constantly reaffirmed within the last fifty years, we have not only placed the seal of approval on such contracts, but have written our decisions into them.

"In Com. ex rel. v. Clearview Coal Co., 256 Pa. 328, under similar facts, this court refused to enjoin a failure to support a public school building or removal of coal thereunder. We there held that to grant the relief asked 'practically takes such coal (as was necessary to support the surface) from defendant and vests it in the school district', which 'would, in fact, be taking of private property for public use without compensation, which the Constitution forbids.' "

The view taken in this dissenting opinion was adopted by the Supreme Court of the United States on appeal in Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, in an opinion written by Mr. Justice Holmes. Plaintiffs, Mr. and Mrs. Mahon, were the owners of a lot. Mr. Justice Holmes, in his opinion, not only decided the question of the rights of these two particular lot owners with respect to the coal company, but went further and held that even the public, with respect to

streets and alleys, could not compel private owners of the underlying coal to support the surface without compensation. We quote from his opinion (p. 415):

"The rights of the public in a street purchased or laid out by eminent domain are those that it has paid for. If in any case its representatives have been so shortsighted as to acquire only surface rights without the right of support, we see no more authority for supplying the latter without compensation than there was for taking the right of way in the first place and refusing to pay for it because the public wanted it very much. The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. Hairston v. Danville & Western Ry. Co., 208 U. S. 598, 605. When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.

"The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. . . . In general it is not plain that a man's misfortunes or necessities will justify his shifting the damages to his neighbor's shoulders. Spade v. Lynn & Boston R. R. Co., 172 Mass. 488, 489 [43 L. R. A. 832, 70 Am. St. Rep. 298, 52 N. E. 747, 5 Am. Neg. Rep. 367]."

In the instant case, the chancellor found that the public interest was involved by reason of the possibility of the interruption of service and that the safety of persons and property was involved by reason of the danger of leakage, but, nevertheless, refused the injunction. We feel that this view corresponds with the

view taken by the Supreme Court of the United States in Pennsylvania Coal Co. v. Mahon, supra, and that plaintiff gas company is in exactly the same position as the owners of surface in the subsidence area in the vicinity of Scranton. Plaintiff was too shortsighted to protect itself against the contingency here presented. Plaintiff, at the time it purchased the right of way in 1916, could easily (possibly with an additional consideration passing to the grantors) have protected itself by purchasing additional rights. The contract could have been drawn so as to prevent the grantors from adding a foot, a yard, or any stipulated depth of additional coverage. It failed to take such precaution. As pointed out by the chancellor, with modern excavating machinery ditching operations can readily be pursued to a great depth, greater than the fill here involved. Since plaintiff failed to purchase from the owners of the servient estate their right to place additional coverage over the natural terrain, it cannot now complain because defendants propose by the filling operations to exercise a right with which they never parted. Defendants still have the right to fill in their land for their own purposes, for their own material advantage, and for the commercial exploitation of their own property and to proceed with the fill.

Plaintiff, when it secured its certificate of public convenience, acquired certain rights of a monopolistic nature. In connection therewith, a duty devolves upon it as a public utility to go to such expense as may be necessary to guard against the interruption of service. It cannot use the power of a court of equity to pass the burden of that expense to someone else, in this case the defendants.

A court of equity cannot do that which the Supreme Court of the United States has said the legislature, in the exercise of its police power, cannot do. The legislature cannot deprive individuals of private rights

without compensation; neither can a court of equity by the exercise of the power of injunction. Plaintiff has the privilege of instituting an eminent domain proceeding for the condemnation of any additional privilege it feels it needs, and a court of law would then pass on whether it is, or is not, entitled to the appropriation of an additional interest in the land which defendants still possess. It cannot deprive defendants of their right to grade their land without paying for the surrender of that right..

I believe the exceptions should be dismissed and the decree nisi refusing the injunction should be made absolute.